SHIRLEY J. STOLL, WIDOW OF EUGENE K. STOLL, APPELLANT, V.
SCHOOL DISTRICT (NO. 1) OF LINCOLN IN THE COUNTY OF LANCASTER IN THE STATE OF NEBRASKA, ET AL., APPELLEES.

301 N.W.2d 68

Filed January 9, 1981. No. 43281.

Barlow, Johnson, DeMars & Flodman for appellant.

Knudsen, Berkheimer, Beam, Richardson & Endacott for appellee NSAA.

Sodoro, Johnson, Daly, Stave, Cavel & Coffey for appellee School Dist. (No. 7) of O'Neill.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an appeal from an order of the three-judge panel of the Nebraska Workmen's Compensation Court, one judge dissenting, dismissing the petition of the plaintiff, Shirley J. Stoll, widow of Eugene K. Stoll (Stoll), praying for benefits allegedly owing because of Stoll's death and claimed to have accrued while Stoll was in the employ of the defendants School District (No. 1) of Lincoln, in Lancaster County, Nebraska (LPS), the Nebraska School Activities Association (NSAA), and School District (No. 7) of O'Neill in the County of Holt (O'Neill).

The plaintiff's petition alleged that Stoll was killed in an automobile accident near Grand Island, Nebraska, on April 20, 1977; that at the time he was in the employ of one or more of the defendants; and that his death arose out of and in the course of that employment. LPS denied that Stoll was engaged in any of his duties as its employee at the time of the accident which caused his death. NSAA alleged that Stoll was not an employee, but an independent contractor. O'Neill, among other things, alleged that it was not an employer of Stoll, but merely an agent of the NSAA in carrying out certain functions in connection with a music contest at O'Neill sponsored by the NSAA.

There is no substantial factual dispute in the evidence. Such conflict as there is consists simply in differences of opinion of witnesses as to the effect of certain regulations. The record shows that Stoll was a permanent full-time employee of LPS as a curriculum consultant in instrumental music. He was, in that capacity, also the head of the music department. As a curriculum consultant, he was an administrative employee of the district and was not engaged in teaching. As an administrator, he was required to be certified. Neb. Rev. Stat. § 79-1229 (Reissue 1976).

In October 1976, he was asked by the administrative assistant to the superintendent of O'Neill to act as a judge for the district No. 3 music contest sponsored by

NSAA and which was to be held on April 21 and 22, 1977. He accepted the invitation, and on April 20, 1977, was killed in an automobile accident while on the way to O'Neill.

The errors assigned on appeal raise the following general question: Did Stoll's death arise out of and in the course of his employment with any one of the defendants?

An employee's injury or death is compensable, under the workmen's compensation act, if it was caused by an accident or occupational disease arising out of and in the course of his employment. Neb. Rev. Stat. § 48-101 (Reissue 1978); *Reis v. Douglas County Hospital*, 193 Neb. 542, 227 N.W.2d 879 (1975). The term "arising out of" describes the accident and its origin, cause, and character, i.e., whether it resulted from risks arising within the scope or sphere of the employee's job. The term "in the course of" refers to the time, place, and circumstances surrounding the accident. The two phrases are conjunctive and the claimant must establish by a preponderance of the evidence that both conditions exist. *Reis v. Douglas County Hospital, supra.*

We will first discuss the issue as it relates to LPS.

Arrangements for Stoll to serve as a judge were not made through LPS, but directly with him by the administrative assistant to the O'Neill superintendent of schools, the contest director for NSAA. The latter had delegated the duty of directing the contest to his assistant. She made motel reservations for Stoll at O'Neill for the nights of April 20 and 21. This expense, as well as mileage and meal allowances, and a judging fee of $45 per day were to be paid to Stoll from contest entry fees paid to NSAA by the participating members.

Certain rules and regulations of LPS are relevant. Stoll, a 12-month employee of LPS, was entitled to 24 days per year vacation time. The regulation concerning such employees was: "Staff members serving on a 12-month basis who receive a stipend are expected to use accrued vacation for consulting purposes." Other

regulations governed other types of employees. Teachers, for example, who received a stipend for such services would have their daily salaries adjusted by reimbursing the cost of a substitute. Staff members who served on less than a 12-month contract were required to take personal leave, i.e., unreimbursed leave. The regulations also recognized a third type of leave, referred to as professional leave. In such cases salary adjustments were not made. Stoll applied for and received professional leave to serve as a judge at the music contest in question. Professional leave, as defined by the regulations, is a type of leave for which no substitute is required because the employee's work can be carried on by others in the building. The regulations provided that professional leave was applicable where the employee was a program participant in a professional meeting or an officer of the organization holding the professional meeting.

The director of staff development for LPS testified that she erred in granting professional leave in this instance and that, if she had known a stipend would be paid, she would have required Stoll to take vacation time rather than professional leave.

The evidence is clear that LPS retained no control over Stoll while he was engaged as a contest judge. The director of staff development testified that staff members were neither discouraged nor encouraged to act in such a capacity. It was not encouraged because such activity took too much staff time.

The plaintiff's principal support for her contention that Stoll was acting within the course and scope of his employment with LPS is founded upon the claim that by serving as a judge he would be entitled to growth points as contemplated by rules and regulations of the district. Growth points for teachers could be earned in a number of ways, including college credit, college teaching, teaching adult education, professional writing, attending professional conferences, and other described activities. None of the specifically described

activities included contest judging. However, the rules and regulations contained a catchall provision for other types of activities which reads as follows:

"ACCREDITMENT OF OTHER ACTIVITIES "This section provides for accreditment of activities worthy of professional growth which do not come within the scope of the above listing and descriptions. It applies only to activities clearly of a high quality which are exceptional in building principal [sic]. In making application for credit, the application shall present:

"A description of the nature of the work and conditions under which it was done.

"Evidence of completion of the work."

Two LPS staff members who were called as witnesses expressed the opinion that judging the music contest would, in Stoll's case, have entitled him to growth points. Judging such contests, however, was not a condition of Stoll's employment, although one of the witnesses testified to his conclusion that it came within the scope of his duties. One witness stated that such activities as judging benefited the school district because the stature of LPS was increased by the participation of its staff and teachers in such activities and because such activities gave the participants beneficial ideas which were brought back to the district.

The rules and regulations of LPS contained a job description for curriculum consultants. The introductory portion thereof reads as follows: "Curriculum consultants have broad responsibility for coordinating and improving the instructional program(s) with which they work. Their specific duties vary somewhat according to subject area, but often include those listed below. Most of these responsibilities involve cooperation with and participation by teachers, principals, and others." The job description then lists four categories of responsibility: (1) Coordination and planning, (2) consultation and public information, (3) evaluation, and (4) professional growth. An examination of the items speci-

fically described under the above headings indicates rather clearly that all the matters pertain to the internal operation of the district. It can be argued otherwise in only two instances. Item 2c reads: "Represent the district in contacts with other agencies." Professional growth is described as follows: "In order to provide leadership described above, keep informed about research and trends by attending professional meetings and reading professional literature in their area of expertise."

Based on the foregoing evidence, the Workmen's Compensation Court found that Stoll was not acting within the scope of his employment at the time of his death; that any benefit to LPS from the activity was indirect and minimal; and that the primary beneficiary was Stoll.

Whether or not travel falls within the scope and course of the employment in a particular case must be determined by the facts in each case. *Schademann v. Casey*, 194 Neb. 149, 231 N.W.2d 116 (1975).

The standard of review governing factual determinations made by the Workmen's Compensation Court is defined in Neb. Rev. Stat. § 48-185 (Reissue 1978). It states that such findings will have the same force and effect as a jury verdict and limits grounds of reversal to four. The single one relevant here is: ". . . there is not sufficient competent evidence in the record to warrant the making of the order . . . ." In applying that provision, this court has held that the Workmen's Compensation Court's findings of fact will not be set aside on appeal unless clearly wrong. *Keith v. School Dist. No. 1*, 205 Neb. 631, 289 N.W.2d 196 (1980); *Hyatt v. Kay Windsor, Inc.*, 198 Neb. 580, 254 N.W.2d 92 (1977).

Two recent opinions of this court are, in principle and on the facts, very closely on point. *Meyer v. First United Methodist Church*, 206 Neb. 607, 294 N.W.2d 611 (1980); *Rowan v. University of Nebraska, ante* p. 588, 299 N.W.2d 774 (1980).

In *Meyer, supra,* the claimant was employed as a "local pastor" by a group of Methodist churches. A local pastor is a lay person who is licensed to preach and who must meet certain educational requirements laid down by the national governing body of the United Methodist Church. Claimant was attending a 4-week continuing education course in Kansas City when she was struck by an automobile while crossing a street. During the course, claimant received her salary, but paid for her own tuition, board, and books. We upheld the finding of the Workmen's Compensation Court denying compensation and held: "'The course of employment requirement tests work-connection as to time, place and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment.'" *Meyer, supra* at 610-11, 294 N.W.2d at 614.

In *Rowan, supra,* an associate professor of art at the University of Nebraska at Lincoln was injured when he fell from a ladder while opening a window in a studio which he maintained in his own home. At the time of his injury, he was working on a sculpture in his home studio. When hired, Rowan was told that he was to do as much creative work as possible. He furnished the material for his own creative work and kept the proceeds from such works if he sold them. The university, however, paid the expense of shipping his works when he exhibited them at other institutions. In that case we said: "As a general rule, the compensation act extends to and covers workmen only while engaged in, on, or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of injury, and during the hours of service of such workmen." *Rowan, supra* at 775, 299 N.W.2d at 774.

Under the facts of the case before us, the Workmen's Compensation Court was entitled under the evidence to find that, under the rules and regulations governing Stoll's employment, he was required to use his own

vacation time to perform contest judging; that his duties did not include the judging of music contests outside LPS; that this was a personal activity of which he was the primary beneficiary and not the school district; and that, in acting as a contest judge, he was not representing the school district. The denial of compensation was, therefore, supported by the evidence and we are not free to overturn the order of dismissal.

We turn now to the claim that an employer-employee relationship existed between NSAA, O'Neill, and Stoll. NSAA is a nonprofit corporation composed of Nebraska public and private high schools. Membership is voluntary. NSAA conducts state and district activities for its members in athletics, music, and debate. The members elect district managing committee representatives who coordinate events in each region. These representatives select the host schools for music contests. In 1977, O'Neill was chosen as host school because it and the local parochial school had ample facilities, between them, for contests.

The O'Neill superintendent of schools delegated organizational responsibility and supervision of the contest to his administrative assistant, Mrs. Johnson. Expenses of the contest came from entry fees paid by contestant schools. If these were insufficient to cover costs, then NSAA reimbursed O'Neill for the balance. Likewise, if the fees exceeded expenses then NSAA received the difference. The NSAA district committee secretary-treasurer was required to account for the funds and expenses.

One week before the contest, Mrs. Johnson sent Stoll a letter confirming their earlier oral arrangement. Among other things, it instructed him to check in at the O'Neill office on Thursday for a judges' meeting. It further stated that NSAA rules would be used for judging the contest.

The NSAA rule book covered eligibility criteria, classification of schools by size for music contests, and events to be offered at such gatherings. It also directed

that district committees or their designates select the judges. Judges, according to the rule book, should behave professionally, not fraternize with directors or discuss performances with unofficial persons, and not communicate with other judges during rounds. Finally, the rule book stated that NSAA judging forms should be used at district contests. Form categories were set forth and rating criteria defined. Form categories included interpretation, intonation, general effect, and direction. Contestants were to be rated outstanding, excellent, good average, below average, or poor on the above categories.

O'Neill officials instructed judges to complete the judging forms in accordance with NSAA rules. Otherwise the judges could fill in the form blanks as they wished. Their decisions were final. O'Neill officials did not review the judges' rulings, nor did NSAA. NSAA Executive Secretary Riley testified that the association did not receive copies of the completed judging forms. NSAA only received reports on the schools participating, number of students competing, and contest expenditures.

An employer has the right to control, supervise, and direct the manner in which his employees work; an independent contractor is generally subject to his co-contractor's control only for direction sufficient to insure that their contract will be met. *Stephens v. Celeryvale Transport, Inc.*, 205 Neb. 12, 286 N.W.2d 420 (1979); *Voycheske v. Osborn,* 196 Neb. 510, 244 N.W.2d 74 (1976); *Bohy v. Pfister Hybrid Co.,* 179 Neb. 337, 138 N.W.2d 23 (1965); *Snodgrass v. City of Holdrege,* 166 Neb. 329, 89 N.W.2d 66 (1958). *Stephens* and *Voycheske* dealt explicitly with the limitations of direction to insure contract compliance.

Deduction of social security taxes and withholding of income taxes ordinarily accompanies employment. *Stephens v. Celeryvale Transport, Inc., supra.* NSAA and O'Neill did not deduct either.

Taken as a whole, the evidence indicates that Stoll

was not an employee of either NSAA or O'Neill. The degree of control exercised by NSAA and O'Neill was only that required to assure the result in accordance with specifications. The judging forms prepared by NSAA and utilized at the O'Neill contest provided guidelines for the judges to insure uniformity of categories, but did not control their discretion. The finding of the Workmen's Compensation Court that Stoll was an independent contractor with NSAA when he met his death is clearly supported by the evidence.

It is also clear that O'Neill was a mere agent of NSAA in supervising the contest. As a general rule, where an obligation is that of a principal, a court cannot enforce the obligation against the agent as long as he is merely acting as agent. *Suzuki v. Gateway Realty, ante* p. 562, 299 N.W.2d 762 (1980). Thus, even if there had been an employer-employee relationship between NSAA and Stoll, O'Neill would not have been liable.

AFFIRMED.

KRIVOSHA, C.J., concurs in result.