RICHARD L. MCGEE, APPELLEE, V. PANHANDLE TECHNICAL SYSTEMS, INC., ET AL., APPELLANTS.

387 N.W.2d 709

Filed June 6, 1986.    No. 85-229.

Philip M. Kelly of Winner, Nichols, Douglas and Kelly, for appellants.

James W. Ellison of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellee.

KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and CAMP, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

The defendants, Panhandle Technical Systems, Inc. (Panhandle), and its workers' compensation insurance carrier, Continental Insurance Company, appeal from an award by a three-judge panel of the Nebraska Workers' Compensation Court in favor of the plaintiff, Richard L. McGee, for injuries received in an auto accident in Utah. The main issue is whether the injuries arose out of and in the course of his employment with Panhandle, a family-owned Nebraska corporation. Plaintiff and his wife, Barbara, each owned one-half of the corporate stock.

After the one-judge hearing, on May 22, 1984, McGee was awarded $180 per week for temporary total disability from October 19, 1982, through the date of the hearing, April 18, 1984, and thereafter for as long as he remained totally disabled as a result of the accident; residual permanent partial disability if the total disability should cease; present and future medical and hospital expenses; and vocational rehabilitation services as provided in Neb. Rev. Stat. § 48-162.01 (Reissue 1984). The defendants applied for rehearing.

On rehearing, the three-judge panel found that McGee's injuries were the result of an October 18, 1982, accident which had arisen out of and in the course of his employment with Panhandle. The one-judge award was modified to further award plaintiff $727 for travel expenses, an additional 50 percent of amounts ordered for disability compensation as a waiting penalty, an attorney fee of $500 for the first hearing, and a $1,500 attorney fee for defendants' failure to obtain a reduction in the award on appeal.

Panhandle was incorporated in February 1981, with the main office in Kimball, Nebraska, and another store in Gering, Nebraska. Barbara, the company president, was always active in the business. Richard was a school administrator by training, having a master's degree in education, and, up to the end of the 1981-82 school year, he was principal of the Kimball, Nebraska, public elementary school. The corporate records show that on May 7, 1982, it was decided that Richard would join the company full time on October 1, 1982. He had previously performed consulting work for Panhandle, for which he was paid. Richard resigned his position as principal and joined the Panhandle staff full time on October 1 as the business manager, at a salary of $2,500 per month. His general duties and responsibilities included the company records and accounts, advertising, service department, and staff and customer training. Some out-of-state travel was required. Barbara was considered to be in charge of Panhandle because of her experience, but they shared most policy decisions.

While attending an Apple computer convention at Dallas, Texas, in 1981, Richard and Barbara were impressed with the marketing procedures of other dealers, and they were encouraged by John Horning, an Apple representative, to visit other Apple stores in California to get new ideas, since they were recognized leaders in new marketing techniques. In August 1982 they decided to do so. Later, the illness of a child prevented Barbara's participation.

Richard drove the family van to California, arriving at Anaheim on October 9. The next day, Sunday, he planned visits to computer stores and visited Disneyland. He visited at least six or seven computer stores during the following week. The length of his visits varied and ranged from a few minutes to a couple of hours, with an average stay of from 30 to 60 minutes. One store was visited twice. His memory from the accident was hazy, and he could only specifically recall his visits to two or three stores. In general, he recalled observing seminars and seminar techniques, the use of videotape, sales demonstrations, service techniques, service contracts, and store layouts. His notes and sketches were lost in the accident which precipitated his claim.

When he was not visiting stores, Richard spent time reading,

preparing for store visits, editing his notes, and recording marketing ideas.

On Sunday, October 17, 1982, he began his return trip by driving to Rialto, California, where he visited relatives for 3 to 4 hours, and at 2 p.m. departed for home. Excepting a few rest stops, he did not make a prolonged stop until he reached St. George, Utah, where he telephoned his wife at 9 or 10 p.m. At that point he intended to drive on until he reached a rest area near Evanston, Wyoming. He planned to rest there 2 to 3 hours before continuing.

Near Provo, Utah, at approximately 3:30 a.m. on October 18, 1982, his van collided head on with a semitrailer. He admitted that he might have fallen asleep at the wheel. He sustained numerous injuries as a result of the accident, including a fracture of the right acetabulum, ligament disruption and dislocation of the right knee, abdominal trauma, sciatic nerve weakness on the right side, a pulmonary contusion, and a cerebral concussion. Panhandle's business was terminated in a matter of months following the accident.

In the first, second, and fifth assignments of error, the appellants contend that the evidence was insufficient to find that Richard McGee was injured in the course and scope of his employment and to find that McGee was an employee as contemplated by the Nebraska Workers' Compensation Act.

The findings of fact by the compensation court on rehearing have the effect of a jury verdict in a civil case, and a judgment may not be set aside on appeal where there is evidence sufficient to support it. *Oham v. Aaron Corp.*, 222 Neb. 28, 382 N.W.2d 12 (1986); Neb. Rev. Stat. § 48-185 (Reissue 1984). In determining the sufficiency of the evidence, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be drawn therefrom. A finding of the Nebraska Workers' Compensation Court after rehearing will not be overturned unless it is clearly wrong. *Oham v. Aaron Corp., supra.*

Appellants correctly assert that it is the plaintiff's burden to establish that the injury for which compensation is sought arose out of and in the course of his employment. Neb. Rev. Stat.

§ 48-101 (Reissue 1984); *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984).

"Arising out of" is a term which "describes the accident and its origin, cause, and character, i.e., whether it resulted from risks arising within the scope or sphere of the employee's job." *Stoll v. School Dist. (No. 1) of Lincoln*, 207 Neb. 670, 672, 301 N.W.2d 68, 71 (1981). On the other hand, " 'in the course of' refers to the time, place, and circumstances surrounding the accident." *Id.*

Appellants contend that Richard was not in the course of his employment when the accident occurred because the trip was for his personal benefit, it involved a minimal amount of actual visitation to computer stores, the trip was not an absolute requirement of Richard's employment, the trip's major purpose was to educate him, there was direct benefit to him and only an indirect benefit to the company, the trip did not fall within the scope of his duties as business manager, and the accident occurred at 3:30 a.m. after he decided to drive through the night.

Whether travel is within the scope and course of employment depends on the facts of each case. *Stoll v. School Dist. (No. 1) of Lincoln, supra*. It is a general rule that a commercial traveler acts in the course of his employment during the entire period of travel on the employer's business. *Gibb v. Highway G.M.C. Sales & Service Corp.*, 178 Neb. 127, 132 N.W.2d 297 (1964). Also,

> the mission of the master must be the major factor in the journey or movement, and not merely incidental thereto . . . . Where an employee, in the performance of his duties, is required to travel and an accident occurs while he is so engaged it arises out of and in the course of his employment and within the scope of the Workmen's Compensation Act.

(Syllabus of the court.) *Solheim v. Hastings Housing Co.*, 151 Neb. 264, 37 N.W.2d 212 (1949).

Although the trip in question was not a part of Richard's everyday duties, the evidence in the record supports a finding that his duties involved some travel and were broad enough in scope to include the trip to California. Further, the trip was

made primarily for business purposes and for the benefit of Panhandle. This is not a case like *Meyer v. First United Methodist Church*, 206 Neb. 607, 294 N.W.2d 611 (1980). There, the employee's injury occurred while she was at an out-of-state seminar for her personal educational benefit, and it was held that such was outside the course and scope of her employment because the employer only indirectly benefited from her attendance and it was not a part of her contract of employment. The record before us contains evidence that Richard went to California primarily to learn marketing techniques to assist and promote Panhandle in its retail sales of Apple computers. It also shows that he spent a substantial amount of time working while he was in California, visited few entertainment attractions, spent little time socializing, charged some of his expenses to Panhandle's accounts, and deducted his costs as employee business expenses on his 1982 income tax return. His decision to drive for long hours on the date of the accident may not in retrospect have been a wise one, but it was a matter of personal convenience.

Appellants argue that as a 50-percent stockholder with his wife, and as an officer and director, Richard was in essence an alter ego of the corporation and therefore is not a covered employee. We do not agree. In *Solheim v. Hastings Housing Co., supra* at 274, 37 N.W.2d at 219, an officer of a corporation who was employed as a construction manager by the same company was a covered employee, as his employment and duties as a manager were separate from his position as an officer, and " 'A corporation is a complete entity separate and distinguishable from its stockholders and officers and if it sees fit to have one of the latter serve it in the capacity of an ordinary employee we see nothing to prevent it from so doing.' "

There was evidence that Richard was hired as business manager, that he was to receive a regular salary, that prior to joining the company full time he performed services as a consultant for which he received a daily wage, and that he did have employee duties apart from his duties as an officer of the company.

As stated in 1C A. Larson, The Law of Workmen's Compensation § 54.00 at 9-166 (1986):

Corporate officers are generally covered by workmen's compensation, not only as to typical "employee" work but also as to managerial activities. However, when corporate office is combined with controlling stock ownership to such an extent that the corporation is in effect the alter ego of the stockholder, coverage is often denied, but even here an exception is sometimes made when the duties involved were typical "employee" duties.

The findings that plaintiff was an employee of Panhandle and entitled to workers' compensation and that plaintiff was injured in the course of his employment were correct.

The appellants' next assignment of error is that the compensation court erred in awarding Richard vocational rehabilitation, based on the contention that the plaintiff could return to work as a schoolteacher.

Section 48-162.01(3) provides in part:

An employee who has suffered an injury covered by sections 48-101 to 48-151 shall be entitled to prompt medical and physical rehabilitation services. When as a result of the injury an employee is unable to perform work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him or her to suitable employment.

The compensation court's determination after rehearing as to an employee's ability to return to work in which he is previously skilled is a factual question which will not be disturbed on appeal to this court unless clearly wrong. *Pollock v. Monfort of Colorado*, 221 Neb. 859, 381 N.W.2d 154 (1986).

Although Dr. Roger Sobel, one of Richard's physicians, stated that, from an orthopedic standpoint, he could return to teaching, there is other substantial evidence which supports the compensation court's determination. At the time of the rehearing, the evidence shows that he experienced physical pain; his recent memory was poor; he was experiencing difficulty in standing, sitting, bending, driving, and concentrating; his attention span was short; his injuries made getting dressed difficult; and his attempts to locate a job where

he could work to his capability, i.e., 2 to 3 hours per day, were unsuccessful.

After the accident Richard sought psychological counseling. One of his counselors, Charles Watts, described him as depressed and suffering from an adjustment disorder with mixed features. Watts testified Richard's emotional state would be helped if he were able to find meaningful work, but the problem was that he had functioned so much higher before that jobs he would have to take now would be a step down. Watts also testified that Richard might not ever be able to work full time.

Dr. Sobel described Richard's physical problems as involving "extremes of motion of the hip and knee and also sitting in one place for an extended period of time, standing or walking for an extended period and driving, sitting in one position long enough to drive for a period of time." The doctor recommended that he not seek work on a permanent basis which involved extensive bending, repeated lifting of objects of greater than 25 pounds, repeated squatting or kneeling, extensive driving, or extensive periods of standing or walking. Dr. Sobel also qualified his statement pertaining to Richard's ability to return to teaching, noting that the plaintiff's reactive depression might create a problem in that regard.

The record supports the three-judge panel's award of an opportunity to be evaluated for reasonably necessary vocational rehabilitation.

The appellants also assert that because the physicians have determined a rating of permanent "disability," Richard should be given that rating and not be placed on temporary total disability.

It is true that Dr. Sobel stated that as a result of the injuries there was a total of a 70-percent permanent physical impairment and loss of physical function to the right lower extremity, which translated to a 28-percent permanent physical impairment and loss of physical function to the body as a whole. However, there is also evidence in the record that Richard's attempt to work after the accident had not been successful and that he has had no success in finding work which he could do, because of his resulting physical and mental

problems. Additionally, there is evidence that he faces future hip and knee joint replacements which may only provide temporary relief.

Although Dr. Sobel did assess a specific percentage of bodily disability based on impairment of the leg, there were other factors to consider, as set forth above, which contributed to Richard's present disability. In any event, "Disability under Neb. Rev. Stat. § 48-121(1) and (2) (Reissue 1978) of the Nebraska workmen's compensation law is defined in the cases in terms of employability and earning capacity rather than in terms of loss of bodily function." *Minshall v. Plains Mfg. Co.*, 215 Neb. 881, 885, 341 N.W.2d 906, 909 (1983).

Because of Richard's complaints in addition to the impairment of the leg itself, the compensation court on rehearing held that he was temporarily totally disabled from October 19, 1982, through the rehearing date of September 19, 1984, and would remain so for an indefinite period of time. Such a finding was not clearly wrong and finds support in the record.

Lastly, appellants object to the 50-percent waiting penalty, arguing that the applicable statute, Neb. Rev. Stat. § 48-125 (Reissue 1984), was intended to prevent frivolous delays, *Updike Grain Co. v. Swanson*, 104 Neb. 661, 178 N.W. 618 (1920), and that the facts here present a reasonable controversy concerning whether plaintiff was acting within the course of his employment, particularly whether or not the trip to California benefited Panhandle.

Section 48-125 in part provides:

(1) Except as hereinafter provided, all amounts of compensation payable under the provisions of this act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death; *Provided*, fifty per cent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability.

"[W]here a reasonable controversy exists between the parties as to the payment of compensation, an injured employee is not entitled to the statutory penalties for waiting time." *Savage v. Hensel Phelps Constr. Co.*, 208 Neb. 676, 680, 305 N.W.2d 375,

378 (1981).

It is noted that the three-judge panel found on this issue that the evidence was "so clear that there is not a reasonable controversy as to defendants' liability . . . ." Whether there was a reasonable controversy is a question of fact. *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985). As previously discussed, the evidence supports plaintiff's claim of a business trip to California, made with the approval and direction of Panhandle management, in accordance with advanced planning of purpose and details to improve Panhandle's business, and not for plaintiff's benefit. We cannot say that its finding of no reasonable controversy was clearly wrong.

Plaintiff is allowed an attorney fee of $750 for services performed in this court.

AFFIRMED.