JOHN REYNOLDS, GUARDIAN AND CONSERVATOR OF KAREN L. REYNOLDS, A PROTECTED PERSON, APPELLANT, v. SCHOOL DISTRICT OF OMAHA, APPELLEE.

461 N.W.2d 758

Filed November 2, 1990.   No. 90-054.

Thomas Blount, of Bertolini, Schroeder & Blount, for appellant.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Karen L. Reynolds, through her guardian and conservator, appeals the denial of workers' compensation benefits for permanently disabling injuries she received in an automobile accident which occurred while she was driving home from Monroe Junior High School (Monroe) in Omaha, where she was employed as a teacher. We affirm.

Reynolds, who suffered a severe head injury, in this appeal lists two assignments of error, which may be consolidated to claim that the Workers' Compensation Court on rehearing erred in its determination that the accident and Reynolds' injuries did not arise out of or in the course of her employment.

In determining whether the evidence is sufficient to support an award by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Snyder v. IBP, inc.*, 235 Neb. 319, 455 N.W.2d 157 (1990). As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Brazee v. City of Lincoln*, 234 Neb. 680, 452 N.W.2d 529 (1990).

The record, considered in the light most favorable to the defendant, School District of Omaha, reflects the following: As of March 5, 1987, Reynolds was employed as a life science teacher at Monroe. She was selected as a facilitator for the gifted student program at the school. At that time, a person selected as a facilitator taught for a half day and used the remainder of his or her working hours to coordinate gifted and talented students' activities within the school. School facilitators, at the time, were trained by the central office

facilitators, and seminars for the teachers were offered nationally and locally.

As part of her duties as a facilitator, Reynolds attended a gifted program conference in Lincoln on Thursday, March 5, and Friday, March 6, 1987. The Omaha school district paid Reynolds' fee for the conference and granted Reynolds professional leave for her absence from Monroe. She was paid her regular wages during the time she attended the conference. Substitute teachers for Reynolds were provided for both March 5 and 6. Reynolds was not required to report to Monroe on either day of the conference, nor was she required to return to school at the conclusion of the conference on Friday, March 6.

Reynolds provided her own transportation to the conference on March 5 and returned to her home that evening without incident. On March 6, she left her Omaha home near 92d and Pacific Streets and drove to Lincoln in her own automobile to attend the conference. Reynolds telephoned her younger sister on the afternoon of March 6 and informed her that she would pick her up after work in Omaha that evening and that they would then continue on to Monroe.

Shortly after 5 p.m., Reynolds arrived at her sister's place of employment, located just north of 69th and Dodge Streets in Omaha. Reynolds intended to give her sister some flowers as a belated birthday gift.

After leaving her sister's workplace, Reynolds, accompanied by her sister, drove to Monroe at 52d and Bedford Streets. While at Monroe, Reynolds read her messages, checked on some gerbils she kept in her classroom, watered plants, and mimeographed materials from the conference. Reynolds then drove back to her sister's place of employment and dropped off the sister. At 6:43 p.m., Reynolds, without ever having returned to the direct route from the conference in Lincoln to her home, was involved in a two-car collision at 72d and Dodge Streets in Omaha. As a result of the accident, Reynolds suffered a left frontal open depressed skull fracture and an intracerebral hematoma. As shown by the evidence, Reynolds will have a protracted course of neurological impairment, and she will remain permanently disabled as a result of the injuries she sustained. At the initial one-judge hearing and on rehearing

before a three-judge panel, the Workers' Compensation Court found that Reynolds had been totally disabled since the accident, a finding that has not been challenged.

A majority of the three-judge panel of the compensation court dismissed the petition, concluding that Reynolds' injuries did not arise out of or in the course of her employment. The majority incorporated the findings from the one-judge hearing, wherein it was found that Reynolds' travel from Lincoln to Omaha in the course of her employment terminated on March 6, 1987, when she arrived at a point on the direct route nearest to her home. The compensation court found that at that point, Reynolds bypassed the direct route to her home and ultimately proceeded to Monroe.

"When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer . . . ." Neb. Rev. Stat. § 48-101 (Reissue 1988). See, also, *Badgett v. St. Joseph Hosp.*, 222 Neb. 467, 384 N.W.2d 302 (1986) (claimant must establish that injury for which compensation is sought arose out of and in course of employment).

Whether travel falls within the scope and course of employment under the Workers' Compensation Act in a particular case must be determined by the facts in that case. *Stoll v. School Dist. (No. 1) of Lincoln*, 207 Neb. 670, 301 N.W.2d 68 (1981). The determination of whether a particular activity arises out of and in the course of employment is a factual determination and may not be reversed unless clearly wrong. *McGee v. Panhandle Technical Sys.*, 223 Neb. 56, 387 N.W.2d 709 (1986); *Gray v. State*, 205 Neb. 853, 290 N.W.2d 651 (1980).

Generally, under what is known as the "going and coming rule," if an employee is injured while going to or from the employee's workplace, the injury does not arise out of or in the course of the employment. See 1 A. Larson, The Law of Workmen's Compensation § 15.11 (1990). For nearly 60 years, Nebraska has adhered to this rule. See, *Siedlik v. Swift & Co.*, 122 Neb. 99, 239 N.W. 466 (1931); *Richtarik v. Bors*, 142 Neb. 226, 5 N.W.2d 199 (1942); *Monroe v. St. Marks Lutheran*

*Church*, 184 Neb. 741, 171 N.W.2d 644 (1969); *Butt v. City Wide Rock Exc. Co.*, 204 Neb. 126, 281 N.W.2d 406 (1979).

The plaintiff attempts to bring this case within the commercial traveler exception to the going and coming rule. Under that exception, where an employee is required to travel in the performance of the employee's duties and an accident occurs while the employee is so engaged, it arises out of and in the course of the worker's employment and is compensable. See *McGee, supra.*

The compensation court found that Reynolds was in the course of her employment while attending the conference in Lincoln. This finding has not been contested. Nevertheless, the fact remains that Reynolds' status as a commercial traveler terminated when she extended her trip beyond that which was necessary for her return to her home. As the compensation court stated, "Reynolds' travel in the course of her employment ceased when she arrived at that point in her route that she would have followed home, probably the Pacific Street exit of I-680." Since Lincoln lies southwest of Omaha and Reynolds proceeded several miles northeast of her home to Monroe, the record fully supports this finding. It is uncontroverted that Reynolds was not required to return to school on either March 5 or 6. This case is no different than if Reynolds had gone home that night and had driven to and from work the next day. In that instance, her injury would clearly not be compensated, as she would simply be traveling to and from her workplace. Even if Reynolds was performing overtime work on the night of the accident, the going and coming rule would still be applicable to the facts of this case. See 1 A. Larson, The Law of Workmen's Compensation § 16.14 (1990).

We have further analyzed this case under the special errand exception to the going and coming rule. See, *Johnson v. Fairbanks Clinic*, 647 P.2d 592 (Alaska 1982); *Swanson by Swanson v. Fairway Foods*, 439 N.W.2d 722 (Minn. 1989); 1 A. Larson, *supra*, § 16.11. Significantly, there was no instruction, direction, requirement, or suggestion that Reynolds return to Monroe on March 6 on a special errand. That being the case, the special errand rule is inapplicable. See *Stephens by Stephens v. Maxima Corp.*, 774 S.W.2d 931 (Tenn. 1989) (holding that an

employee's conduct did not fall within the purview of the special errand rule because her employer had not instructed, directed, required, or even suggested that she return home to retrieve an employment form and that such action had been the employee's decision).

The compensation court's finding that Reynolds' injuries did not arise out of or in the course of her employment is not clearly wrong. The dismissal of the plaintiff's petition is affirmed.

AFFIRMED.

WHITE, J., dissenting.

The majority here approves a most peculiar decision of the Workers' Compensation Court. All agree that the trip to Lincoln was in the scope of employment and that the trip to Omaha was covered until a point at Interstate 680 and Pacific Street, where, instead of proceeding east on Pacific Street to her home, the employee continued on I-680 to Dodge Street in a direct route to her place of employment, Monroe Junior High School. The journey into and out of a parking lot adjacent to Dodge Street should be disregarded as a minor deviation not contributing to the accident and injuries.

At the moment the employee passed the eastbound exit on Pacific Street, the fickle arms of the compensation act were withdrawn, to embrace again the employee the moment she entered Monroe Junior High. Although the employer argues in its brief that the employee's duties did not require her to return to Monroe, it conceded in oral argument that her presence was within the scope of employment and any injuries occurring at the school would have been compensable. No similar factual situation has been presented to us for determination.

It seems to me that the compensation court could have chosen three separate dispositions and, with those options, chose the least defensible, fair, and beneficent. The compensation court could have determined: (1) A trip by an employee for business of an employer, begun at the employee's home, loses its business purpose when the employee returns to her principal place of employment; (2) a trip begun at the employee's home continues its business purpose until the employee returns to her home, excluding any deviations for nonemployment purposes; or (3) a trip begun at the employee's

home loses its business purpose at any time when the return trip deviates from the "direct route" to the home, regardless of the business purpose of the continuation of the trip beyond the compensation court's point of no financial return.

Obviously, I believe the second alternative is the most logical and more attuned to the beneficent intentions of the Legislature in the passage of the compensation act.