JOSE L. TORRES, APPELLANT, V. AULICK LEASING, INC., AND ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ITS WORKERS' COMPENSATION INSURANCE CARRIER, APPELLEES.

628 N.W. 2d 212

Filed June 15, 2001. No. S-00-1187.

Samuel W. Segrist, of Meister & Segrist, for appellant.

Marvin O. Kieckhafer, of Smith Peterson Law Firm, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Jose L. Torres brought a workers' compensation claim against his employer, Aulick Leasing, Inc. (Aulick), for injuries he received as the result of an automobile accident which occurred while Torres was traveling from his home to the jobsite at which he was working. The trial judge of the Workers' Compensation Court dismissed Torres' claim, and the Workers' Compensation Court review panel affirmed. Torres now appeals.

## FACTUAL BACKGROUND

Aulick is a trucking company engaged in the business of hauling aggregate materials, including rock, sand, and dirt, to highway construction projects. The trucks used in Aulick's operations are owned by Aulick. Aulick's drivers are paid a percentage of the gross amount hauled by the driver. Although Aulick's home office is located in Scottsbluff, Nebraska, the nature of Aulick's business requires that it move its operations from one location to another on a regular basis.

Torres began working as a driver for Aulick in April 1996. Torres lived in Scottsbluff but worked for Aulick on several projects at various locations throughout Nebraska, South Dakota, and Wyoming. Torres drove a truck owned by Aulick while working on each job.

Aulick's drivers generally worked Monday through Friday, with occasional work on Saturdays. Drivers were not required to stay at the jobsite on weekends and could go home if they chose to do so. Aulick's general policy regarding such travel was that for jobs lasting less than 30 days, employees were allowed to take an Aulick truck to return to their homes for the weekends. If the job was to last more than 30 days, employees were required to use their personal vehicles to return home on weekends. Generally, employees were allowed to use Aulick trucks to return home on weekends during the first 2 weeks of any new job.

In August 1996, Torres was assigned to a project in the area of Sundance and Gillette, Wyoming. The job was expected to last 4 to 5 months. Aulick established a "hub" facility at a location in Gillette consisting of fuel tanks, a maintenance van, and a mailbox in which drivers deposited their paperwork. The trucks were usually parked at this hub facility overnight and on weekends. For the first 2 weeks of this job, Torres used an Aulick truck to go home on the weekends. Torres was not paid any mileage during these trips. Thereafter, Torres used his personal vehicle to travel home on weekends as he was instructed to do by the project foreman.

In August and September 1996, while working on the Sundance-Gillette project, Torres began experiencing certain mechanical problems with the truck he was driving. He informed the project foreman of these problems. The foreman told Torres that upon returning to work on Monday, September 23, Torres should haul one load that morning and thereafter take his truck to Newcastle, Wyoming, to have the truck repaired. On Friday, September 20, Torres parked the Aulick truck in Gillette. He then traveled to his home in Scottsbluff in his personal vehicle. Torres was not being paid by Aulick during this time. During this weekend, Torres had no contact with anyone from Aulick, did not do any work for Aulick, and was not being paid by Aulick. Torres engaged in personal activities over the weekend, including helping his brother move into a new home, attending church, visiting his sister, and spending time with his family. Torres was to report back to his truck in Gillette at 6 a.m. Monday.

On Monday, September 23, 1996, at approximately 12:30 a.m., Torres began the return trip to Gillette, Wyoming, from

Scottsbluff. At approximately 3 a.m., while driving his personal vehicle back to the jobsite, Torres swerved to avoid a deer and rolled his vehicle into a ditch. Torres suffered severe injuries as a result of the accident.

On October 6, 1997, Torres filed a petition seeking workers' compensation benefits. Trial was held on August 4, 1998. One issue presented at trial was whether Torres had a fixed place of employment such that the "going to and from work rule" applied. Other issues presented at trial were whether Torres was a commercial traveler and whether Torres was on a "special errand" for his employer at the time of the injury.

On August 27, 1998, the trial judge of the Workers' Compensation Court dismissed Torres' petition with prejudice without making any findings of fact or conclusions of law with respect to whether Torres had a fixed place of employment such that the going to and from work rule applied, or whether Torres was a commercial traveler or on a special errand at the time of his injury. On May 3, 1999, the Workers' Compensation Court review panel affirmed the dismissal of Torres' petition, finding that it was "implicit in the order of dismissal" that the trial judge did not find that Torres had a fixed place of employment and that sufficient evidence existed in the record to support the trial judge's conclusions. Torres appealed.

On appeal, this court determined that because the trial court failed to make explicit findings of fact and conclusions of law on the issues presented as required by Workers' Comp. Ct. R. of Proc. 11 (1998), there could be no meaningful appellate review. *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000) (*Torres I*). We remanded the cause to the trial court with directions to "enter an order which complies with the requirements of rule 11, taking into consideration how the going to and from work rule applies to the facts of the instant case and whether Torres was a commercial traveler or on a special errand at the time of his injury." *Id.* at 864, 606 N.W.2d at 103.

On remand, the trial court found that Torres had a fixed place of employment, the Sundance-Gillette jobsite, and that the going to and from work rule applied. The trial court then found that there was no causal connection between an employer-created condition and Torres' injury which would entitle Torres to recover

workers' compensation benefits for injuries which occurred while on his way to work. The court further determined that Torres was not a commercial traveler, and he was not on a special errand at the time of the injury. The court then denied Torres' claim for workers' compensation benefits for the injuries sustained in the September 23, 1996, accident. An order dismissing Torres' claim was entered by the trial court on May 3, 2000. On October 20, the review panel affirmed the decision of the trial court. Torres appealed and filed a petition to bypass, which this court granted.

## ASSIGNMENTS OF ERROR

Torres claims, restated, that the trial court erred in (1) applying the going to and from work rule, (2) finding that Torres was not a commercial traveler, and (3) finding that Torres was not on a special errand at the time of his injury.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2000), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Gebhard v. Dixie Carbonic, ante* p. 715, 625 N.W.2d 207 (2001); *Hagelstein v. Swift-Eckrich, ante* p. 305, 622 N.W.2d 663 (2001). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In connection with questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior court. *La Croix v. Omaha Public Schools*, 254 Neb. 1014, 582 N.W.2d 283 (1998).

## ANALYSIS

### GOING TO AND FROM WORK RULE

Torres first claims that the trial court erred in applying the going to and from work rule. An employee may recover

workers' compensation benefits for injury caused by an accident arising out of and in the course of his or her employment. See, *Torres I*; Neb. Rev. Stat. § 48-101 (Reissue 1998). Prior to our decision in *La Croix v. Omaha Public Schools, supra*, Nebraska adhered to a "bright-line" version of the going to and from work rule. This rule stated: "An injury sustained by an employee while going to and from work, at a fixed place of employment, does not arise out of and in the course of employment." *Id.* at 1017, 582 N.W.2d at 285. See, also, *Johnson v. Holdrege Med. Clinic*, 249 Neb. 77, 541 N.W.2d 399 (1996); *Acton v. Wymore School Dist. No. 114*, 172 Neb. 609, 111 N.W.2d 368 (1961). This rule was characterized as a "bright-line" rule because an employee could recover for an injury sustained while going to and from work only if that injury occurred on premises owned by the employer. See, *La Croix v. Omaha Public Schools, supra*; *Johnson v. Holdrege Med. Clinic, supra*. Thus, this rule was sometimes referred to as the "premises" rule. See *id.*

We abandoned the bright-line premises rule in *La Croix* and adopted a different approach to analyzing cases dealing with injuries sustained by an employee while going to and coming from work. This approach allows an employee to recover for injuries sustained off the employer's premises when there is a distinct causal connection between an employer-created condition and the occurrence of the injury. *Id.*

In *La Croix*, plaintiff was encouraged by her employer to park in a parking lot not owned by the employer and to use a shuttle service supplied by the employer to get to her work premises. Plaintiff fell and was injured in the parking lot while on her way to board the shuttle. We held that by encouraging employees to park in the lot and providing transportation to the workplace from the lot, the employer created a condition under which its employees will necessarily encounter hazards while traveling to the premises where they work. Thus, we held that there was a distinct, causal connection between the employer's sponsoring of the parking lot and plaintiff's injury. Because such a causal connection was present, plaintiff's injury arose out of and in the course of her employment.

■ Under *La Croix v. Omaha Public Schools*, 254 Neb. 1014, 582 N.W.2d 283 (1998), the going to and from work rule

as currently applied in Nebraska is that "injuries sustained by an employee while going to and coming from work do not arise out of and in the course of employment unless it is determined that a distinct causal connection exists between an employer-created condition and the occurrence of the injury." *Torres I* at 862, 606 N.W.2d at 101. See, also, *La Croix v. Omaha Public Schools, supra.* Whether an injury arose " 'out of' " and " 'in the course of' " employment must be determined from the facts of each case. *Cords v. City of Lincoln,* 249 Neb. 748, 753, 545 N.W.2d 112, 117 (1996). Factual determinations made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Gebhard v. Dixie Carbonic, ante* p. 715, 625 N.W.2d 207 (2001).

Torres argues that he had no fixed place of employment such that the going to and from work rule cannot be applied. However, the trial court found that Torres did have a fixed place of employment, that being the Sundance-Gillette jobsite. The record supports this finding. The record shows that Torres was assigned to work on a construction project with work to be performed in the area of Sundance and Gillette. A "hub" facility consisting of fuel tanks, a maintenance van, and a mailbox in which drivers deposited their paperwork was located in Gillette. Aulick's trucks were usually parked at this hub facility overnight and on weekends. Torres performed his work duties at the Sundance-Gillette jobsite. The job was expected to last 4 to 5 months. The trial court was not clearly wrong in finding that Torres had a fixed place of employment.

The trial court also made a specific finding that there was no distinct causal connection between an employer-created condition and the occurrence of Torres' injury. The trial court stated,

> Other than the fact that plaintiff had to drive from his home in Scottsbluff to the workplace or job site in Northeast Wyoming, there is no causal connection between the employer-created condition and the occurrence of the injury . . . . The location of a job site or workplace for three to four months does not rise to the level of an employer-created condition as found in LaCroix, supra.

The trial court was not clearly wrong in finding that the establishment of a jobsite in an area to which Torres must travel did

not constitute an employer-created condition similar to that found in *La Croix v. Omaha Public Schools, supra.* In *La Croix*, the employer created the condition which caused the employee's injury by encouraging her to park in the employer-sponsored parking lot and providing the shuttle service. The employee was injured in the parking lot while boarding the shuttle. In the present case, Torres was injured while traveling on a public highway when he swerved to avoid a deer. The employer did not create this condition. The trial court's findings were not clearly wrong. Thus, the going to and from work rule applies in this case unless it is determined that Torres was a commercial traveler or that the "special errand" exception to the going to and from work rule applies.

### COMMERCIAL TRAVELER

Torres next claims that the trial court erred in determining Torres was not a commercial traveler. The trial court found that "Torres had no business duties whatsoever in driving back and forth between Northeast Wyoming and Scottsbluff, Nebraska. The trip was personal in nature and had no business purpose." Thus, the trial court found that Torres was not a commercial traveler.

Where an employee, in the performance of his or her duties, is required to travel and an accident occurs while he or she is so engaged, the accident arises out of and in the course of his or her employment and is within the scope of the Nebraska Workers' Compensation Act. *Torres I*; *McGee v. Panhandle Technical Sys.*, 223 Neb. 56, 387 N.W.2d 709 (1986). A commercial traveler is regarded as acting in the course of his or her employment during the entire period of travel on the employer's business. *Torres I*; *McGee v. Panhandle Technical Sys., supra.* The mission of the employer must be the major factor in the journey or movement, and not merely incidental thereto. *McGee v. Panhandle Technical Sys., supra.* " '[T]raveling employees are generally within the course of their employment from the time they leave home on a business trip until they return, for the self-evident reason that the traveling itself is a large part of the job.' " *Torres I*, 258 Neb. at 862, 606 N.W.2d at 102, quoting 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 14.01 (1999). Commercial travelers are not subject to the

going to and from work rule because they are already "on the job" during the time they are traveling. *Torres I.*

Whether travel falls within the scope and course of employment under the Nebraska Workers' Compensation Act in a particular case must be determined by the facts in that case. *Reynolds v. School Dist. of Omaha,* 236 Neb. 508, 461 N.W.2d 758 (1990). The determination of whether a particular activity arises out of and in the course of employment is a factual determination and may not be reversed unless clearly wrong. *Id.*

In order to be a commercial traveler, Torres must be required to travel in the performance of his duties and be on the employer's business during the travel, with the employer's mission being the major factor in the travel and not merely incidental thereto. See *McGee v. Panhandle Technical Sys., supra.* The record shows that the travel during which the accident occurred was not required by the employer and that Torres was not traveling in the performance of his job duties. On weekends, employees were free to return home if they chose to do so. The record shows that it was Torres' personal decision to leave the jobsite on Friday to return to his home in Scottsbluff, thus necessitating the return trip to the jobsite the following Monday, during which time the accident occurred. He was not required to do so by Aulick. The record further shows that Torres was not "on the employer's business" when the accident occurred, and the mission of the employer was not the major factor in the journey or movement. Torres was not engaged in the performance of his job duties or performing any business of his employer while traveling to and from Scottsbluff or while in Scottsbluff. He was not being paid by Aulick during any of this time. The trial court's findings that Torres had no business duties while on the trip during which the accident occurred and that the trip was "personal in nature and had no business purpose" are supported by the record. The trial court was not clearly wrong in finding that Torres was not a commercial traveler.

## SPECIAL ERRAND EXCEPTION

Finally, Torres claims that the trial court erred in finding that the "special errand" exception to the going to and from work rule did not apply in this case. The special errand

exception to the going to and from work rule has been stated as follows:

> When an employee, having identifiable time and space limits on the employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 14.05[1] at 14-5 (2001). The special errand exception applies when there is instruction, direction, requirement, or suggestion by the employer that the employee make the journey. *Reynolds v. School Dist. of Omaha*, 236 Neb. 508, 461 N.W.2d 758 (1990).

As previously stated, the determination of whether a particular activity arises out of and in the course of employment is a factual determination and may not be reversed unless clearly wrong. *Reynolds v. School Dist. of Omaha, supra*. Thus, whether an employee's activity is covered by the special errand exception and is within the course and scope of employment is a factual determination and will not be reversed unless clearly wrong. See *Reynolds v. School Dist. of Omaha, supra*. See, also, *Publix Supermarkets v. Finocchi*, 650 So. 2d 1122 (Fla. App. 1995) (application of special errand doctrine generally depends on factual determinations); *Electronic Service Clinic v. Barnard*, 634 So. 2d 707 (Fla. App. 1994); *Tampa Airport Hilton Hotel v. Hawkins*, 557 So. 2d 953 (Fla. App. 1990) (whether employee's activity is covered by special errand exception is factual determination and cannot be disturbed on appeal unless clearly erroneous); *Schell v. Blue Bell, Inc.*, 637 P.2d 914 (Okla. App. 1981) (whether employee's activities are encompassed within special errand exception to going and coming rule presents question of fact for trial judge).

The trial court found that Aulick did not instruct, direct, require, or suggest that Torres return to Scottsbluff for the

weekend, and that Torres was not on a special errand while returning to the jobsite near Gillette. Torres, however, argues that because he was instructed to take his truck to Newcastle, Wyoming, for repairs on Monday, September 23, 1996, the return trip from Scottsbluff to the jobsite to pick up the truck constituted a special errand. In support of his argument, Torres relies on *Westcoatt v. Lilley*, 134 Neb. 376, 278 N.W. 854 (1938).

In *Westcoatt*, the employee was employed to haul gravel from the employer's gravel pit and was killed in an accident which occurred while the employee was returning to the gravel pit from his home. On the day prior to the accident, the employee was instructed by the employer to take a gas tank owned by the employer, fill it with gas, and bring it back with him to the gravel pit the next day. While on his way to work the next day with the filled gas tank, the employee was killed in a collision with another vehicle. The trial court's award of workers' compensation benefits to the employee's survivors was affirmed by this court, determining that the accident arose out of and in the course of the employee's employment.

Torres' argument that he was on a special errand at the time of the accident is without merit. Unlike the employee in *Westcoatt v. Lilley, supra*, at the time of the accident in this case, Torres was not engaged in a journey that was made due to the employer's instruction, direction, requirement, or suggestion. The employer did not direct Torres to make the journey to and from his home in Scottsbluff, and Torres was not engaged in any activity that the employer instructed or directed him to perform as was the employee in *Westcoatt*. Furthermore, the record shows that Torres was instructed to take the truck to Newcastle for repairs after he hauled one load on the morning of September 23, 1996. Thus, even if taking the truck to Newcastle to be repaired would have constituted a special errand, Torres had not yet begun that task. Torres was not making the trip from Scottsbluff to the jobsite for the purpose of having the truck repaired. Torres first had to arrive back at the jobsite, pick up his truck, and haul one load before he could take the truck for repairs. The trial court's finding that Torres was not on a special errand at the time of the accident was not clearly wrong.

## CONCLUSION

For the above-stated reasons, the judgment of the Workers' Compensation Court is affirmed.

AFFIRMED.