P.A.M., APPELLANT, V. QUAD L. ASSOCIATES, A LIMITED
PARTNERSHIP, APPELLEE.
S.K., APPELLANT, V. QUAD L. ASSOCIATES, A LIMITED
PARTNERSHIP, APPELLEE.
380 N.W.2d 243

Filed January 24, 1986.   Nos. 84-600, 84-618.

Frederick S. Cassman of Abrahams, Kaslow & Cassman, for appellants.

Richard J. Rensch of Hansen, Engles & Locher, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

P.A.M. and S.K., former employees of Quad L. Associates (Quad), the owner and operator of a restaurant known as Wendy's Old Fashioned Hamburgers (Wendy's), appeal from judgments entered by the district court for Douglas County, Nebraska, sustaining Quad's motions for summary judgment and dismissing appellants' actions against Quad. Because the injuries arose out of the same incident and involve the same questions of law, the cases were consolidated for argument in this court.

The specific question presented to this court is whether appellants' injuries arose out of and in the course of their employment within the Nebraska Workmen's Compensation Act and that the actions, therefore, were within the exclusive jurisdiction of the Workmen's Compensation Court, or

whether the appellants could maintain a common-law action for negligence against their employer. This appears to be a case of first impression in this jurisdiction, in that the injuries sustained by the appellants occurred as a result of their being criminally assaulted while their employer's premises were being robbed. We believe that the district court was correct in finding that the injuries arose out of and in the course of the appellants' employment and that the actions were therefore exclusively within the jurisdiction of the Nebraska Workmen's Compensation Court. For that reason we affirm the judgments of the district court.

The depositions and affidavits of the various witnesses establish that on Friday, October 2, 1981, S.K., who was then 16 years of age and a junior in high school, was employed as a countergirl at a restaurant known as Wendy's Old Fashioned Hamburgers located in Omaha, Nebraska. S.K. had been working on a part-time basis since April of 1981. Although she had not been scheduled to work that evening, she was called to report for work at 6:30 p.m. Since she did not drive an automobile, her mother drove her to the restaurant. Later that evening, S.K. asked her friend and fellow employee, P.A.M., if P.A.M. could give her a ride home. P.A.M. agreed to do so.

Wendy's remained open until midnight, at which time the doors were locked and the exterior sign turned off. Thereafter, S.K. and three other employees performed their cleanup and restocking work, which was completed shortly after 1 a.m., at which time they punched out on the timeclock and the others left. S.K., nevertheless, waited in the building approximately 20 to 25 minutes for P.A.M. to finish her bookwork so she could be driven home.

P.A.M., who was then 19 years of age, had been employed by Wendy's for approximately $3\frac{1}{2}$ years, beginning while she was in high school. She had been designated as one of several "assistant managers" at that location. Normally there were four employees and one manager on duty, but that evening the manager was working at another location. After closing, P.A.M. performed her bookwork, made up the deposit, and placed the day's receipts in deposit bags. P.A.M. testified in her deposition that part of her duties included making the bank deposit of the day's receipts. She indicated that she would do

this by carrying the locked bank deposit bags to her automobile and driving to a bank approximately two blocks from the restaurant's location. She further testified that she was paid more than the other nonmanagement employees for having the position of assistant manager and that one of the duties as assistant manager was to make the night deposits upon closing.

After finishing her work P.A.M. also clocked out. It was approximately 1:30 a.m. She then shut off all of the lights in the building, turned on the burglar alarm, and she and S.K. left the building and walked to the parking lot adjacent to the restaurant where her automobile was located. P.A.M., at that time, was carrying the deposit bags which she intended to place in the night depository at the bank. As both women were entering P.A.M.'s automobile, which was parked in a portion of the parking lot, two men carrying guns ran over from behind a dumpster and demanded the deposit bags, which P.A.M. turned over to them. The men then ordered both women to return to the building and instructed P.A.M. to unlock the door and turn off the burglar alarm. After entering the building P.A.M. was directed to open the safe. The women were then taken into separate rooms, where each was brutally sexually assaulted. After being sexually assaulted P.A.M. was further directed to deliver to the armed men the keys to the locked bank deposit bags. The two men then left the premises and ultimately were apprehended and convicted.

Although the assaults upon these women were vicious and brutal and nothing we do here is intended to minimize the tragedy, the question presented to us is not whether the attacks were cruel and brutal but, rather, whether the employer is subject to common-law liability because, as appellants' petitions alleged, the employer was negligent "[i]n failing to provide any security protection for its female employees leaving the premises in the middle of the night when the defendant knew, or should have known, of the danger of criminal assault," or did appellants' injuries arise out of and in the course of their employment, thereby limiting their cause of action to filing claims under the Nebraska Workmen's Compensation Act. If these were injuries arising out of and in the course of their employment, their exclusive remedies were in

the Workmen's Compensation Court. As we observed in *Johnston v. State*, 219 Neb. 457, 462, 364 N.W.2d 1, 5 (1985), quoting from *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 228 N.W.2d 303 (1975):

> The Workmen's Compensation Act provides the exclusive remedy by the employee against the employer for *any* injury arising out of and in the course of the employment. This is the basis on which the rights of employers and employees are put in balance. The employer, by having liability imposed on him without fault, receives in return relief from tort actions. Logically, therefore, where the employer is negligent he should not be relieved of liability where compensation coverage is not provided to the employee.
>
> . . . .
>
> . . . The operative fact is one of coverage, not of election to file a claim for compensation. If coverage exists, even though for some reason compensation may not be payable, the Workmen's Compensation Act is *exclusive*.

We think that the question involving P.A.M.'s case is clear under Nebraska law. At the time that the assault occurred, P.A.M. was on the employer's premises and was on her way to the bank to make the night deposit, clearly within the course of her employment. As admitted to by P.A.M., one of her duties, for which she received compensation, was to make the night deposit. The situation regarding P.A.M. is not dissimilar to the facts in the case of *Ridenour v. Lewis*, 121 Neb. 823, 238 N.W. 745 (1931). The evidence in *Ridenour* discloses that the employee was hired for the purposes of installing, repairing, and servicing radios and making collections for his employer. In the performance of these duties and while on a public street, the employee was robbed and assaulted. As a result of the assault, he died. In affirming the judgment of the district court awarding Ridenour's family death benefits provided by workmen's compensation law, we said at 831, 238 N.W. at 749:

> It seems to be well settled that injuries caused by intentional assaults are compensable if they arise out of, or result from, a risk connected with the employment. *Socha v. Cudahy Packing Co.*, 105 Neb. 691; *Nelson v.*

*Service Oil Co., ante*, p. 762. This court is committed to the view that, when an employee is sent into the public street, under the circumstances detailed in this record, on his master's business, his employment necessarily involves exposure to all risks of the street, and injury from any such cause, not involving what is often referred to in the books as an "Act of God" (*Gale v. Krug Park Amusement Co.*, 114 Neb. 432), arises "out of the employment," within the meaning of the workmen's compensation act.

We concluded in *Ridenour* by saying at 833, 238 N.W. at 749:

It would follow in the instant case that where the employment involved the installation, repair, and "servicing" of radios sold by the master, and also the collection of the master's accounts by the employee, and where such employee passing along the public streets pursuing his employment, with one of such accounts then in his possession for collection, is there assaulted for the purpose of robbery, and therein and thereby receives wounds causing his death, such injury arises out of, and in the course of, his employment.

Similarly, in *Goodwin v. Omaha Printing Co.*, 131 Neb. 212, 267 N.W. 419 (1936), we held that the shooting of a traveling salesman, by a highwayman, while driving from one town to another in furtherance of the business of the employer arises out of the employment within the meaning of the Nebraska Workmen's Compensation Act providing for compensation for injury or death by accident arising out of and in the course of the employment. In *Goodwin* we said at 216, 267 N.W. at 421:

In the case at bar, the duties of the deceased required him to travel the highway where the accident occurred. He was killed while being robbed of property, a part of which was his own and a part that of the employer. A salesman who is required to travel from town to town for the purpose of selling his employer's goods is as much within the employment in so doing as he is when selling goods at such towns. Highway robbery is a hazard of the highway and a hazard of an employee whose employment requires him to travel the highways in the service of his employer.

To the same effect, the possibility of one's being robbed while

carrying a night deposit to the bank is a hazard which is not uncommon to the employment and one which can reasonably be said to arise out of and in the course of employment. Had P.A.M. filed a claim for workmen's compensation, we find it difficult to imagine that the claim would have been denied. It seems clear to us that P.A.M.'s claim arose out of and in the course of her employment.

While the situation with regard to S.K. may at first blush seem somewhat different, the result must, nevertheless, be the same. Although it is true that at the time the injury occurred to S.K. she was not then carrying out a specific task for the employer for which she received compensation, as was P.A.M., the evidence conclusively establishes that she was injured while on the premises of her employer and while leaving her employment. This has traditionally and consistently been held by this court to be an injury arising out of and in the course of one's employment. In *Thomsen v. Sears Roebuck & Co.*, 192 Neb. 236, 219 N.W.2d 746 (1974), we held that an employee injured on the premises of the employer where he works while coming to work or leaving after work is within the course of his employment under the Nebraska Workmen's Compensation Act. We said further, at 240, 219 N.W.2d at 749:

> "There are at least four situations in which the course of employment goes beyond an employee's fixed hours of work: the time spent going and coming on the premises; an interval before working hours while waiting to begin or making preparations, and a similar interval after hours; regular unpaid rest periods taken on the premises, and unpaid lunch hours on the premises. A definite pattern can be discerned here. In each instance the time, although strictly outside the fixed working hours, is closely contiguous to them; the activity to which that time is devoted is related to the employment, whether it takes the form of going or coming, preparing for work, or ministering to personal necessities such as food and rest; and, above all, the employee is within the spatial limits of his employment. . . ."

And in *Buck v. Iowa Beef Processors, Inc.*, 198 Neb. 125, 128, 251 N.W.2d 875, 877 (1977), quoting from 1 A. Larson,

The Law of Workmen's Compensation § 15.00 at 4-3 (1972), we said: " 'As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and coming from work before or after working hours or at lunchtime are compensable * * *.' "

Further, in *McDonald v. Richardson County*, 135 Neb. 150, 280 N.W. 456 (1938), we held that an employee injured when leaving the courthouse in which she was employed was within the course of her employment within the meaning of the Workmen's Compensation Act. In doing so we observed at 153-54, 280 N.W. at 458:

In this case Byrd McDonald was not in the courthouse for her own personal reasons. She was in the building because she was employed there. For that reason she was on the driveway on the grounds. It was necessary as a part of her employment that she come and go across the grounds after leaving the public street. To urge that she had a right to go upon the premises as a member of the public is, we think, putting too narrow a construction upon the meaning of the compensation act as to what is or is not within the course of employment. An employee is required to cross the grounds of the premises of employer. An employee leaving the premises of her employer in the usual and customary way after her work is ended is within the course of her employment within the meaning of the workmen's compensation law. Walking to and from the street and a building where one is employed is a necessary incident of the employment, and an injury sustained in so doing is compensable.

We believe that the facts in the instant case are identical with those in *McDonald*, in that P.A.M. and S.K. were required as a part of their employment to come and go to work; as such, when injured upon the premises of their employer, they are entitled to recover workmen's compensation. As we have already noted, the appellants, in their brief, describe their cause of action as arising by reason of their employer's failing to provide them with a secure premises in which to work. This is not unlike cases previously decided by this court wherein employees are injured by falling upon their employer's premises

and maintain that the employer failed to provide a safe place to work. An example is *Acton v. Wymore School Dist. No. 114*, 172 Neb. 609, 612-13, 111 N.W.2d 368, 370 (1961), wherein we said:

> " 'The reason upon which the exception is grounded is that the hazards of entering or leaving the place of employment while on the property of the employer are hazards of the employment which must be assumed by the employer. The employer is obliged to provide safe ingress and egress to and from the place of employment for employees entering or leaving its property in the performance of the work of the employment. * * * But this is on the theory that the employer has control of the premises and the employee and that the risks of entering or leaving the place of work are incidental to the employment.' "

The appellants seek to distinguish those cases by maintaining that because the injuries received in the instant case were in the nature of sexual assaults, the injuries did not arise out of the employment, citing 99 C.J.S. *Workmen's Compensation* § 227 at 765 (1958), wherein it is noted:

> The view has been taken that for the injury from an assault to be compensable, the risk of such an assault must be greater for the employee than for one not engaged in such employment. The general rule, sometimes embodied in a statutory provision, is that where the assault is committed by a third person intending to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment, the injury does not arise out of the employment . . . .

While appellants are correct in their statement of the law, they are incorrect in their analysis of the undisputed facts in this case. There is no evidence that the assault by the two robbers against either of these women was because of any personal relationship with the women or was directed against them for reasons other than the fact that they were present as employees and were victims of a robbery at which time they were each assaulted. In 1 A. Larson, The Law of Workmen's

Compensation § 11.11(b) at 3-178 to 3-179 (1985), the noted author attempts to analyze whether an assault is personal and therefore within the exception noted above. He notes:

> There is a marked distinction between the holdup in which the robber says to himself, "I am going to track down Henry Davis, wherever he may be and steal the gold watch which I know he has," and the holdup in which the robber says, "I am going to rob whoever happens to be on duty as night watchman . . . ." The latter is not really personal to this victim at all; he is attacked exclusively in his employment capacity as being the one who occupies the position in relation to that employment which the robber has found to create a favorable opportunity.

The question presented to us is really no different than one which would be presented to us if, rather than being sexually assaulted, these women had been struck about the heads and shoulders following the robbery. No one would suggest for a moment that the assault upon them was personal and unrelated to the robbery. The women were sexually assaulted because the robbers intended to rob Wendy's, as a part of the overall scheme to steal the money and to raise havoc in the premises.

While this court has not heretofore specifically passed on that issue, other courts which have been presented with the situation identical to the case at bar have reached decisions similar to that reached by us here. In *Helton v. Interstate Brands Corp.*, 155 Ga. App. 607, 271 S.E.2d 739 (1980), the Georgia Court of Appeals held that an employee assaulted early in the morning when arriving at work and parking her automobile in the employees' parking lot adjacent to her employer's plant was the subject of an "accident" within the Georgia Workers' Compensation Act and thereby precluded from bringing an independent tort action against her employer.

Further, in *McKinley v Holiday Inn*, 115 Mich. App. 160, 320 N.W.2d 329 (1982), the Michigan Court of Appeals held that a hotel maid who was criminally assaulted by one of the guests sustained an injury arising out of and in the course of her employment subject to the provisions of the Michigan Worker's Disability Compensation Act and was therefore precluded from bringing a common-law action against her employer.

Appellants have cited to us several cases in which common-law negligence actions have been permitted. These cases, however, are distinguishable on important facts. In *Eisenberg v. Industrial Com.*, 65 Ill. 2d 232, 357 N.E.2d 533 (1976), the employee was raped off the premises of the employer. In *State ex rel. Common School Dist. v. District Court*, 140 Minn. 470, 168 N.W. 555 (1918), the employee was raped off the employer's premises by an assailant who had "lurked about" all day waiting for an opportunity to assault her. And, finally, in *Doney v. Tambouratgis*, 23 Cal. 3d 91, 587 P.2d 1160, 151 Cal. Rptr. 347 (1979), the court took special note of the fact that the employer failed to raise the defense of the exclusivity of workmen's compensation.

We believe that an examination of the undisputed facts in the cases discloses without question that both S.K. and P.A.M. sustained injuries arising out of and in the course of their employment while on their employer's premises and were therefore entitled to make claims under the Nebraska Workmen's Compensation Act. Because they were entitled to make claims under the Nebraska Workmen's Compensation Act, they are precluded from bringing common-law actions for negligence. The employer was entitled to judgments as a matter of law. The district court was correct in sustaining the motion for summary judgment in each of the cases. The judgments are affirmed.

AFFIRMED.