STEPHANIE ZOUCHA, APPELLANT, V.
TOUCH OF CLASS LOUNGE, APPELLEE.
690 N.W.2d 610

Filed January 14, 2005. No. S-03-971.

Michael M. O'Brien, P.C., for appellant.

Matthew J. Buckley and William D. Gilner, of Nolan, Olson, Hansen & Lautenbaugh, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

During the early morning hours of June 5, 2001, Stephanie Zoucha was assaulted as she left work at the Touch of Class Lounge (the Lounge) in Omaha, Nebraska. Zoucha was severely injured. She filed a claim for workers' compensation benefits, but the single judge of the Workers' Compensation Court dismissed her petition based upon his finding that the assault did not take place on the premises of Zoucha's employer, was not causally related to Zoucha's employment, and thus did not occur in the course of Zoucha's employment. The single judge's order was affirmed by the review panel of the Workers' Compensation Court, and the judgment was affirmed by the Nebraska Court of Appeals; we granted Zoucha's petition for further review. The question presented in this appeal is whether, for workers' compensation purposes, a shopping center parking lot, used by employees of the businesses located in the center, is considered part of the premises of an employer located in the center.

## FACTUAL BACKGROUND

Zoucha was employed at the Lounge as a bartender and waitress starting in early 2001. Patricia Bauer, the owner of the Lounge, testified that Zoucha's duties ended when she closed and locked the door of the Lounge after closing. Zoucha was not required, for instance, to make night deposits of the Lounge's revenue.

On June 4, 2001, Zoucha started her shift at approximately 4:30 or 5 p.m. and was the only bartender working that evening. During the evening, a group of people came in, including William

Nunez. At one point during the evening, Zoucha took a drink away from Nunez. Nunez also approached Zoucha and asked if she was interested in smoking marijuana with him after her shift. Zoucha admitted to smoking marijuana on occasion, but testified that she had not smoked marijuana with Nunez before, or socialized with him, and that she told him she would not smoke with him.

Zoucha stopped serving drinks at 1 a.m. and collected drinks from the patrons of the Lounge at 1:15 a.m. See Neb. Rev. Stat. § 53-179 (Reissue 1998). She cleaned up the Lounge, locked up, and left at about 2:15 a.m. Zoucha testified that she went to her car in the parking lot, unlocked the door, put her bags in, and was struck with "[l]ike a tire iron on the back of my head." Zoucha sustained an open skull fracture and other severe injuries. Zoucha has no memory of any events from the time of the assault on June 5, 2001, until June 16. At the time of trial, Zoucha still suffered from significant cognitive impairment, including difficulty with speech and thought formation. Zoucha's purse, containing her tip money from her shift, was stolen and not recovered.

Zoucha testified that she had seen her attacker before being struck and that he resembled Nunez. Nunez was arrested and, at the time of trial, had been charged with the assault. The Omaha police officer who investigated the assault, in an affidavit seeking an arrest warrant for Nunez, averred that Nunez had admitted being at the scene, and a denim jacket had been found in Nunez' apartment with Zoucha's blood on it.

Bauer testified that she did not own the building in which the Lounge was located but simply leased space in the building. There were two businesses in the building, including the Lounge, and approximately seven or eight other businesses in another, adjacent building. Characterized generally, the Lounge is located in a suburban shopping plaza, or "strip mall." Bauer testified that she did not own or have control or authority over the parking lot, which was provided for the common use of all the businesses located in the plaza. Bauer estimated that Zoucha's car had been located about 50 to 60 feet from the door of the Lounge. Bauer stated that she did not require her employees to park in the plaza parking lot, but would expect them to do so as a matter of convenience.

Zoucha filed a petition in the Workers' Compensation Court seeking disability benefits and medical expenses. After trial, the single judge made findings of fact generally accepting Zoucha's description of the events prior to the assault. However, the single judge concluded that at the time of the assault, Zoucha had left the premises of the Lounge. The single judge applied the "going to and from work" rule, which will be explained in greater detail below, and found that Zoucha "was not in the course of her employment at the time that she suffered her severe injuries." Consequently, the single judge dismissed Zoucha's petition. The review panel of the Workers' Compensation Court, and the Court of Appeals, affirmed the judgment of the single judge for substantially the same reasons articulated by the single judge. See *Zoucha v. Touch of Class Lounge*, No. A-03-971, 2004 WL 943218 (Neb. App. May 4, 2004) (not designated for permanent publication). Zoucha filed a petition for further review, which we granted.

## ASSIGNMENTS OF ERROR
Zoucha assigns that the Court of Appeals erred in (1) concluding that Zoucha's injuries did not arise out of and in the course of her employment with the Lounge, (2) concluding that Zoucha's injuries did not occur on the premises of the Lounge, and (3) failing to find a direct causal connection between Zoucha's employment and her injuries.

## STANDARD OF REVIEW
Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Sweeney v. Kerstens & Lee, Inc.*, 268 Neb. 752, 688 N.W.2d 350 (2004). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004).

## ANALYSIS

 Prior to discussing the particular circumstances of this case, we review some of the basic principles of workers' compensation law that will be relevant to our analysis. When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury. Neb. Rev. Stat. § 48-101 (Reissue 2004). The two phrases "arising out of" and "in the course of" in § 48-101 are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist. *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000). The phrase "arising out of," as used in § 48-101, describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job; the phrase "in the course of," as used in § 48-101, refers to the time, place, and circumstances surrounding the accident. *Logsdon, supra.* We note, although it is not contested by the parties, that the assault was an "accident" within the meaning of § 48-101. See *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 380 N.W.2d 243 (1986).

 The "in the course of" requirement of § 48-101 has been defined as testing the work connection as to time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment. *Misek v. CNG Financial*, 265 Neb. 837, 660 N.W.2d 495 (2003). An injury is said to arise in the course of the employment when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto. *Id.*

 In this case, the single judge concluded that Zoucha's injuries did not occur in the course of employment because she failed to satisfy the requirements of the "going to and coming from work" rule. That rule, as currently applied in Nebraska, is that injuries sustained by an employee while going to and coming from work do not arise out of and in the course of employment

unless it is determined that a distinct causal connection exists between an employer-created condition and the cause of the injury. *Torres v. Aulick Leasing*, 261 Neb. 1016, 628 N.W.2d 212 (2001). Prior to our adoption of this rule, we adhered to a "bright-line" rule, pursuant to which an employee could recover for an injury sustained while going to and from work only if that injury occurred on premises owned by the employer. See *id.* But we abandoned that rule in *La Croix v. Omaha Public Schools*, 254 Neb. 1014, 582 N.W.2d 283 (1998), and adopted the current rule set forth above.

Our current formulation of the "going to and coming from work" rule, however, "allows an employee to recover for injuries sustained *off the employer's premises* when there is a distinct causal connection between an employer-created condition and the occurrence of the injury." (Emphasis supplied.) *Torres*, 261 Neb. at 1022, 628 N.W.2d at 218. The initial inquiry—and the issue presented by Zoucha's argument in this appeal—is whether or not the employee was on the employer's premises when the injury was sustained. See *La Croix, supra.* The requirement of a distinct causal connection between an employer-created condition and the occurrence of the injury for an employee to recover for an injury sustained *off* the employer's premises, see *id.*, does not alter our prior rule that an employee injured *on* the premises of the employer where he or she works while coming to work or leaving after work is within the course of his or her employment under § 48-101, see *P.A.M., supra.*

Consequently, we first address Zoucha's argument that she was on the Lounge's premises when she was assaulted. Parking lots owned or maintained by an employer are generally considered part of the employer's premises for workers' compensation purposes. See, *La Croix, supra*; 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 13.04[2][a] (2004). But as Zoucha correctly notes, the general rule is that "if the owner of the building in which the employee works provides a parking lot for the convenience of all tenants, or if a shopping center parking lot is used by employees of businesses located in the center, the [parking lot] rule is applicable." See *id.* at 13-41. Accord, *May Dept. Stores Co. v. Harryman*, 307 Md. 692, 517 A.2d 71 (1986); *Lovato v. Maxim's Beauty Salon, Inc.*, 109 N.M. 138, 782 P.2d

391 (N.M. App. 1989); *P.B. Bell & Associates v. Ind. Com'n of Ariz.*, 142 Ariz. 501, 690 P.2d 802 (Ariz. App. 1984).

It would be "impractical and illogical" to require actual ownership or control of a parking lot by a tenant in a shopping plaza consisting of multiple independent businesses, each of which would have to be an owner in common with all the other tenants in order to share a nebulous control over its geographical confines. *Frishkorn v. Flowers*, 26 Ohio App. 2d 165, 167, 270 N.E.2d 366, 368 (1971), *abrogated in part on other grounds, Brown v. B.P. Am., Inc.*, 85 Ohio App. 3d 194, 619 N.E.2d 479 (1993). Accord, *May Dept. Stores Co., supra*; *Merrill v. J. C. Penney*, 256 N.W.2d 518 (Minn. 1977). As the *Frishkorn* court explained under the circumstances of that case,

> [i]n reality, the employer and the other tenants of the . . . Shopping Center, having reciprocal rental rights and privileges, were also accorded the common use and access of the parking area. Logically, to that extent, this was tantamount to an essential expansion of their respective premises for the purpose of adequately serving and furthering their business interests. It follows that the appellant-employee, as well as the employees of the other tenants, derived their similar rights and privileges from the shopping center by virtue of a vested privity in the objectives of their employers.

26 Ohio App. 2d at 168-69, 270 N.E.2d at 369. Accord, *May Dept. Stores Co., supra*; *Merrill, supra*. Based on that reasoning, the majority of courts to have addressed the question have concluded that parking lots in shopping malls are part of the premises of employers whose main premises are located within the mall. See, e.g., *Turner v. B Sew Inn*, 18 P.3d 1070 (Okla. 2000); *Livingstone v. Abraham & Straus, Inc.*, 111 N.J. 89, 543 A.2d 45 (1988); *Barnes v. Stokes*, 233 Va. 249, 355 S.E.2d 330 (1987); *May Dept. Stores Co., supra*; *Merrill, supra*; *Adams v. Lemuria, Inc.*, 738 So. 2d 295 (Miss. App. 1999); *Lovato, supra*; *P.B. Bell & Associates, supra*; *Montgomery Ward v. Cutter*, 64 Or. App. 759, 669 P.2d 1181 (1983); *Frishkorn, supra*; *Rose v. Cadillac Fairview Shopping Center*, 668 A.2d 782 (Del. Super. 1995), *affirmed* 676 A.2d 906 (Del. 1996). See, generally, 1 Larson & Larson, *supra*.

We find the reasoning of these courts to be persuasive and consistent with established principles of Nebraska workers'

compensation law. Therefore, we hold that for workers' compensation purposes, a shopping center parking lot provided for the convenience of, and used by, employees of the businesses located in the center is considered part of the premises of an employer located in the center. Given that holding, the record in this case establishes beyond dispute that Zoucha was on the premises of her employer when she was assaulted, and the single judge erred in concluding otherwise. Consequently, the review panel and Court of Appeals erred in affirming the order of the single judge.

Likewise, the single judge erred in concluding that Zoucha's injuries did not arise out of and in the course of her employment. The single judge's factual findings conclusively establish that Zoucha was injured while on the premises of her employer and while leaving her employment. " ' "As to employees having fixed hours and place of work, injuries occurring on the premises while they are going to and coming from work . . . are compensable . . . ." ' " *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 648, 380 N.W.2d 243, 247 (1986). Accord 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 13.00 (2004). " 'An employee leaving the premises of her employer in the usual and customary way after her work is ended is within the course of her employment within the meaning of the [workers'] compensation law.' " *P.A.M.*, 221 Neb. at 648, 380 N.W.2d at 247-48, quoting *McDonald v. Richardson County*, 135 Neb. 150, 280 N.W. 456 (1938).

In *P.A.M., supra,* two female restaurant employees were leaving the restaurant late at night, after cleaning the restaurant and locking the doors. One of the employees, P.A.M., was required to go to the bank to make the night deposit, but the other employee, S.K., was simply getting a ride home from P.A.M. and had no remaining duties to perform. As they were getting into P.A.M.'s automobile, they were assaulted and robbed. We concluded that P.A.M.'s injuries arose out of and in the course of her employment, because she was on her employer's premises and on her way to the bank to make the night deposit, a duty for which she received compensation. But we also concluded that S.K.'s injuries arose out of and in the course of her employment.

While the situation with regard to S.K. may at first blush seem somewhat different, the result must, nevertheless, be

the same. Although it is true that at the time the injury occurred to S.K. she was not then carrying out a specific task for the employer for which she received compensation, as was P.A.M., the evidence conclusively establishes that she was injured while on the premises of her employer and while leaving her employment. This has traditionally and consistently been held by this court to be an injury arising out of and in the course of one's employment.

*Id.* at 647, 380 N.W.2d at 247.

The circumstances of *P.A.M., supra,* are substantially indistinguishable from the facts of this case as found by the single judge. The evidence in the instant case reveals that Zoucha, while leaving her employment, walked directly from the Lounge to her car, which was parked on the premises of her employer, where she was assaulted. Pursuant to *P.A.M.,* the record establishes that Zoucha's injuries arose out of and in the course of her employment and are compensable under § 48-101. Zoucha's first and second assignments of error have merit, and given our conclusion on those issues, we need not consider her remaining assignment of error.

## CONCLUSION

The Workers' Compensation Court erred in concluding that Zoucha was not on the Lounge's premises when she was assaulted and that her injuries did not arise out of and in the course of her employment. The Court of Appeals erred in affirming the judgment of the Workers' Compensation Court review panel. The judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals with directions to reverse the judgment of the Workers' Compensation Court review panel and remand the cause to the review panel for further remand to the single judge for a determination of the benefits to which Zoucha is entitled, including any attorney fees allowed pursuant to Neb. Rev. Stat. § 48-125 (Reissue 2004).

REVERSED AND REMANDED WITH DIRECTIONS.