Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/02/2019 09:07 AM CDT

- 41 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

Addisen E. Coughlin, a minor child and dependent of
Daniel Coughlin, by and through her Conservator,
Kyle J. Coughlin, appellant, v. County
of Colfax, Nebraska, appellee.

___ N.W.2d ___

Filed April 2, 2019.    No. A-18-456.

1. **Workers' Compensation: Appeal and Error.** Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

2. ____: ____. In reviewing workers' compensation cases, an appellate court is not free to weigh the facts anew; rather, it accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case.

3. **Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.

4. **Workers' Compensation: Appeal and Error.** An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.

5. **Workers' Compensation: Proof.** The two phrases "arising out of" and "in the course of" in Neb. Rev. Stat. § 48-101 (Reissue 2010) are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist.

6. ____: ____. The phrase "arising out of," as used in Neb. Rev. Stat. § 48-101 (Reissue 2010), describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job; the phrase "in the course of," as used in § 48-101, refers to the time, place, and circumstances surrounding the accident.

- 42 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

7. **Workers' Compensation: Words and Phrases.** The "in the course of" requirement of Neb. Rev. Stat. § 48-101 (Reissue 2010) has been defined as testing the work connection as to time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment.

8. **Workers' Compensation.** Injuries sustained by an employee while going to and from work at a fixed place of employment do not arise out of and in the course of employment unless a distinct causal connection exists between an employer-created condition and the occurrence of the injury.

9. **Workers' Compensation: Proof.** The employee has the burden to establish the presence of a causal connection between an employer-created condition and his or her injury.

10. **Workers' Compensation.** For the going to and from work rule to apply, an employer must have a fixed place of employment.

11. ____. The recognized exceptions to the going to and from work rule, each of which follow from the rule's requirement that an employee show a causal connection between an employer-created condition and his or her injury, include the employer-supplied transportation exception, the commercial traveler exceptions, and the special errand exception.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the Workers' Compensation Court: Julie A. Martin, Judge. Affirmed.

Linsey Moran Bryant and Bradley E. Nick, of Sidner Law, for appellant.

David A. Dudley and Eric J. Sutton, of Baylor Evnen, L.L.P., for appellee.

Moore, Chief Judge, and Pirtle and Arterburn, Judges.

Moore, Chief Judge.

## I. INTRODUCTION

This case arises out of the death of Daniel Coughlin, a deputy with the Colfax County Sheriff's Department (the Department). Daniel was survived by his daughter, Addisen E. Coughlin.

- 43 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

Kyle J. Coughlin, Daniel's brother and Addisen's conservator, filed a petition in the Nebraska Workers' Compensation Court seeking benefits for Addisen from the County of Colfax, Nebraska (the County). Finding no causal connection between an employer-created condition and Daniel's death, the compensation court concluded that Daniel's death did not arise out of and in the course of his employment with the County. As a result, the court denied Kyle's petition. Kyle appeals, and for the reasons set forth below, we affirm.

## II. BACKGROUND

While Daniel was driving home from work on the morning of January 12, 2016, he had a cell phone conversation with Deputy Shawn Messerlie, whose shift had just begun. The conversation took place about 5 minutes after Daniel clocked out from his 12-hour shift. During that conversation, the left front side of Daniel's vehicle hit a deer carcass that was lying on the highway. Daniel's vehicle dragged the carcass for about 70 feet before he lost control. Another vehicle driving in the opposite lane of traffic collided with the driver's side of Daniel's vehicle, and the collision caused Daniel's death.

On December 22, 2016, Kyle filed a petition in the Workers' Compensation Court alleging that Daniel's death was a compensable injury under Neb. Rev. Stat. § 48-101 (Reissue 2010) because it occurred in the course and scope of his employment with the County. On account of that injury, Kyle's petition sought benefits for Addisen under Neb. Rev. Stat. §§ 48-122 (Cum. Supp. 2018), 48-124 (Reissue 2010), and 48-125 (Cum. Supp. 2016). In response, the County filed an answer denying that Daniel's death arose out of and in the course of his employment. Prior to trial, the parties filed a joint pretrial memorandum, which provided the following stipulations:

> 1. The date of the death was January 12, 2016[,] and at that time Deputy Daniel Coughlin was an employee at the Colfax County Sheriff's Department, County of Colfax, Nebraska.

- 44 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

2. Daniel Coughlin was talking on his cell phone with Deputy Shawn Messerlie while driving in his own vehicle in Colfax County on or about January 12, 2016.

3. During said phone conversation[,] which lasted from approximately 7:06 a.m. to 7:11 a.m., on that date, he was involved in a motor vehicle accident resulting in his death.

4. Addisen Coughlin was at all time[s] relevant herein, a dependent of Daniel Coughlin as defined by Neb. Rev. Stat[.] §48-124(3).

5. The parties stipulate that the average weekly wage of Daniel Coughlin at the time of the accident and his death was $810.00 per week.

## 1. Trial

Trial was held on February 21, 2018.

### (a) Deputy Messerlie's Testimony

Messerlie testified that shortly after his January 12, 2016, shift with the Department began and Daniel's shift had ended, he used his cell phone to exchange shift-change information with Daniel. Messerlie could not recall who initiated the call. Although Messerlie remembered some of the information Daniel conveyed to him about his shift, he could not remember all of it. He also did not remember how long they discussed Daniel's shift. The last topic Messerlie remembered discussing with Daniel was that they both had to work expanded shifts because another deputy, Ryan Andel, was on vacation. Messerlie then heard Daniel repeat an expletive three times, and the call ended.

Messerlie was trained by his superiors to exchange shift-change information. Messerlie and Daniel usually used their cell phones to do so. Eighty percent of Messerlie's on-duty cell phone use occurred while he was driving. Messerlie felt that exchanging shift-change information in person would be impractical. In-person exchanges would require a deputy who is coming on duty to travel to the Department's office,

- 45 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

which could be far from the location that deputy was assigned to patrol.

Messerlie admitted that he and Daniel had conversations in the past that were unrelated to work while one or both of them were on duty. He also admitted that he and Daniel sometimes discussed Daniel's feeling that he was being "ridden pretty hard by [Andel]."

### (b) Corporal Andel's Testimony

Andel, who by the time of trial had been promoted to corporal within the Department, testified that he trained new recruits as the field training officer. Andel and the new recruits reviewed the Department's policies and procedures, its field training guide, and its field training checklist.

Andel affirmed that the field training checklist was "very important." It contained various headings covering different aspects of the deputies' jobs. The second item under the "Roll Call Procedures" heading stated, "Check with other Deputy/Dispatch," which instructed deputies who were coming on duty to ask the deputy that he or she was replacing for any shift-change information. At the time of the accident, exchanging shift-change information was an important part of every deputy's job. A deputy who was coming on duty usually called the deputy he or she was replacing to receive shift-change information. These calls were to be limited to exchanging "need-to-know" information. Usually, deputies who were coming on duty used their cell phones to make this call from their patrol cars; and although deputies going off duty could have received these calls from their houses, they usually received them in their patrol cars. Andel had never directed deputies to pull over when driving to exchange shift-change information.

Andel always exchanged shift-change information after his shift, and he admitted to exchanging that information with his cell phone while driving. Andel could tell when a deputy was talking to him from a vehicle, but he had never reprimanded a deputy for talking to him while he or she was driving. Andel

- 46 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

acknowledged that it would be possible for a deputy to do a job-related duty, like exchanging shift-change information, when he or she was "off the clock" and not being paid. On the day of Daniel's accident and subsequent death, Daniel was assigned to work from 7 p.m. to 7 a.m. and clocked out at 7:01 a.m. The same day, Messerlie was assigned to work from 7 a.m. to 7 p.m.

Andel testified that he was having "issues" relating to field training and interdepartmental matters with Daniel and Messerlie at the time of the accident.

### (c) Sergeant Hemmer's Testimony

Tony Hemmer testified that as a sergeant with the Department, he was the immediate supervisor for the deputies on patrol. Hemmer had never reprimanded an employee for failing to pull over when using his or her cell phone, and at the time of trial, he did not pull over 70 percent of the time that he used his cell phone while driving to communicate with deputies.

Hemmer explained that the exchange of shift-change information was important, furthered the business of the Department, and, at times, affected deputy safety. While the deputies' field training checklist directed them to exchange shift-change information, exchanging that information was only a suggested practice. Deputies had a choice as to how they exchanged shift-change information, and it was appropriate to exchange that information over the telephone. Because of the distance Messerlie lived from the courthouse, Hemmer felt it would not have been practical or convenient for him to meet with Daniel at the courthouse to exchange shift-change information.

Hemmer also testified that the entire county was the Department's fixed place of employment or workplace.

### (d) Sheriff Kruse's Testimony

Paul Kruse, the Colfax County sheriff, testified that he administered the day-to-day operations of the Department at the time of the accident. The Department had written policies

- 47 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

and procedures, which did not include policies or procedures for exchanging shift-change information.

In Kruse's opinion, exchanging of shift-change information was an important duty for deputies and sergeants that had safety benefits. Although Kruse suggested that deputies stay on the clock to exchange shift-change information, no policy required them to do so. Kruse had never reprimanded a deputy for exchanging shift-change information after he or she clocked out. Nevertheless, Kruse felt that if Daniel had important information to share with Messerlie on January 12, 2016, he would have stayed on the clock. Kruse allowed his deputies 15 or 30 minutes of overtime to exchange shift-change information, but his deputies needed written overtime approval from his sergeant if they required more than 15 minutes of overtime. At trial, Kruse testified that he did not try to limit overtime, although his sergeant may have. In his deposition, however, he testified that he did try to limit overtime.

Deputies who lived in Colfax County drove their patrol cars to their homes and were able to clock in and out of work from there. Deputies who lived outside of Colfax County drove their personal vehicles to the Department's office at the county courthouse, where their patrol cars were parked in a garage. Those deputies clocked in from their patrol cars at the Department's office. At the time of Daniel's accident, he was the only deputy who was living outside of Colfax County.

While the Department did not have a written policy about what off-duty officers could do in their personal vehicles, it did have a written policy regarding cell phone use in patrol cars:

> [U]se of a cell phone or other electronic device while driving is dangerous and specifically prohibited while on working time. You are prohibited from using a cell phone or electronic device at any time while driving a County vehicle. If you must make an emergency communication while driving, you should normally pull to the side of the

- 48 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

road and stop before making the call, texting, or otherwise using the device.

Kruse believed this policy was strictly adhered to at the time of Daniel's accident, and he personally pulled over whenever he used his cell phone.

Kruse acknowledged that the public's ability to listen to the dispatch radio channel was "a concern." As a result, deputies were required to discern whether to communicate information with each other using the radio or using their cell phones. The Department reimbursed the deputies for part of their cell phone bills.

Kruse went to the scene of Daniel's accident when he heard about it. At the scene, he observed Daniel's bulletproof vest, weapon, "badge of authority," and a pair of handcuffs in the backseat of his vehicle. Daniel had taken off his vest in compliance with the Department's written policy that off-duty deputies remove their bulletproof vests.

## 2. Workers' Compensation Court Order

On April 30, 2018, the Workers' Compensation Court entered an order dismissing Kyle's claims. The court found that Daniel's accident and injury did not arise out of and in the course of his employment with the County. The court found that the record contained no evidence of a causal connection between Daniel's cell phone call with Messerlie and the accident such that the going to and from work rule would allow recovery under § 48-101.

The court rejected Kyle's argument that "the telephone call was related to work for purposes of 'shift change information,' and thus established a distinct causal connection." The court explained its finding:

> [I]n this case, [Daniel's] shift had ended, he had clocked out of work, he was in his personal vehicle driving home, and several minutes had passed from the time he clocked out before he placed the call. According to his superiors, [Daniel] should have been in his patrol car and remained on the clock to make this call.

- 49 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

As a result, the court concluded that the conversation between Daniel and Messerlie at the time of the accident was not "work-related to overcome the flaws of [Kyle's] case."

The court also rejected Kyle's argument that the going to and from work rule did not apply because Daniel did not have a fixed place of employment. The court explained that the Department had an office in the county courthouse. Although other deputies could clock in to work without traveling to the courthouse, Daniel was required to go to the courthouse to begin his workday by picking up his patrol car. The court noted that finding Daniel did not have a fixed place of employment would result in a dramatic expansion of workers' compensation law:

> The Court simply cannot find for [Kyle] under this scenario as every state or county employee could conceivably be entitled to workers' compensation benefits for injuries occurring while going to or coming from work if the accident occurred in the state or county where he or she worked.

Kyle appeals.

## III. ASSIGNMENTS OF ERROR

Kyle assigns, consolidated and restated, that the district court erred in (1) finding that Daniel's injury was noncompensable under the going to and from work rule, (2) finding that Daniel had a fixed place of employment such that the going to and from work rule applied, and (3) concluding that finding for him would result in a dramatic expansion of workers' compensation law.

## IV. STANDARD OF REVIEW

Under Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), the judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case and may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud;

- 50 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

(3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018).

[1-4] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Gimple v. Student Transp. of America*, 300 Neb. 708, 915 N.W.2d 606 (2018). In reviewing workers' compensation cases, this court is not free to weigh the facts anew; rather, we accord to the findings of the compensation court the same force and effect as a jury verdict in a civil case. *Bower, supra*. In testing the sufficiency of the evidence to support the findings of fact, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Kaiser v. Metropolitan Util. Dist.*, 26 Neb. App. 38, 916 N.W.2d 448 (2018). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Dragon v. Cheesecake Factory*, 300 Neb. 548, 915 N.W.2d 418 (2018).

## V. ANALYSIS

[5] Before discussing the particular circumstances of this case, we review some of the basic principles of workers' compensation law that will be relevant to our analysis. The Nebraska Workers' Compensation Act allows employees to recover damages for certain injuries:

> When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

- 51 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

§ 48-101. The two phrases "arising out of" and "in the course of" in § 48-101 are conjunctive; in order to recover, a claimant must establish by a preponderance of the evidence that both conditions exist. *Zoucha v. Touch of Class Lounge*, 269 Neb. 89, 690 N.W.2d 610 (2005); *Maradiaga v. Specialty Finishing*, 24 Neb. App. 199, 884 N.W.2d 153 (2016).

[6,7] The phrase "arising out of," as used in § 48-101, describes the accident and its origin, cause, and character, i.e., whether it resulted from the risks arising within the scope of the employee's job; the phrase "in the course of," as used in § 48-101, refers to the time, place, and circumstances surrounding the accident. *Maradiaga, supra*. The "in the course of" requirement of § 48-101 has been defined as testing the work connection as to time, place, and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment. *Zoucha, supra*.

## 1. Going To and From Work Rule

The compensation court concluded that Daniel's injuries did not arise out of and in the course of his employment with the County because of the going to and from work rule. Specifically, the court found that Kyle failed to show a causal connection between an employer-created condition and Daniel's death. Kyle challenges this determination. As discussed below, we find that Daniel's use of his cell phone while driving was not an employer-created condition under the going to and from work rule.

[8,9] Injuries sustained by an employee while going to and from work at a fixed place of employment do not arise out of and in the course of employment unless a distinct causal connection exists between an employer-created condition and the occurrence of the injury. See, *Zoucha, supra*; *La Croix v. Omaha Public Schools*, 254 Neb. 1014, 582 N.W.2d 283 (1998). The employee has the burden to establish the presence of a causal connection between an employer-created

- 52 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

condition and his or her injury. See, e.g., *La Croix, supra*; *Coffey v. Waldinger Corp.*, 11 Neb. App. 293, 649 N.W.2d 197 (2002).

### (a) Fixed Place of Employment

Because the existence of a fixed place of employment is integral to application of the going to and from work rule, we first address Kyle's assigned error regarding the compensation court's finding. The compensation court found that because Daniel had to report to the Department's office at the county courthouse before beginning his shifts, the Department had a fixed place of employment at the courthouse as it related to him. We agree.

[10] For the going to and from work rule to apply, an employer must have a fixed place of employment. See, *Torres v. Aulick Leasing*, 261 Neb. 1016, 628 N.W.2d 212 (2001); *La Croix, supra*. The most analogous case to the present situation is *Torres, supra*, and we find that its reasoning applies to Daniel's employment situation.

The employee in *Torres* was a driver for a company that hauled materials to highway construction projects. The company had a home office in Scottsbluff, Nebraska, but the nature of its business required it to move its operations from one location to another on a regular basis. In his employment with the company, the employee worked at various locations throughout Nebraska, South Dakota, and Wyoming. The company's drivers generally worked Monday through Friday. Because they were not required to stay at the jobsite on weekends, they could go home if they chose to do so. If the job lasted less than 30 days, the company allowed employees to use their company-owned trucks to return to their homes for the weekends.

The company assigned the employee in *Torres* to a 4- to 5-month project in Wyoming, where the company had established a "'hub'" facility consisting of tanks, a maintenance van, and a mailbox in which the drivers deposited their paperwork. 261 Neb. at 1019, 628 N.W.2d at 216. The trucks were also parked at the facility overnight and on the weekends.

- 53 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

One weekend, the employee drove home in his personal vehicle. On his way back to the Wyoming facility, the employee swerved to avoid a deer and rolled his vehicle into a ditch. The employee was injured and sought workers' compensation benefits. The compensation court found that the employee had a fixed place of employment at the Wyoming facility such that the going to and from work rule applied, which finding the Nebraska Supreme Court determined was not clearly erroneous. *Torres, supra*.

Similarly, in the present case, the record contained sufficient facts to support the compensation court's conclusion that Daniel had a fixed place of employment. Daniel's patrol car was located at the Department's garage at the county courthouse. Daniel drove his personal vehicle to the garage to retrieve his patrol car and returned it to the garage at the completion of his shift. He could not clock in or out of work without exchanging his personal vehicle for the patrol car. After the accident, Kruse observed Daniel's bulletproof vest, "badge of authority," weapon, and handcuffs in the backseat of his personal vehicle, which indicates that he had left his place of employment and was off duty. Taken together, these facts support the compensation court's conclusion that Daniel had a fixed place of employment at the time of his accident, and we do not find that conclusion to be clearly erroneous.

### (b) Employer-Created Condition

We next examine whether there was an employer-created condition in this case that renders the going to and from work inapplicable.

The Nebraska Supreme Court first applied the exception to the bright line rule, referred to as the "premises rule" or the "going and coming" rule, in *La Croix v. Omaha Public Schools*, 254 Neb. 1014, 582 N.W.2d 283 (1998). The court allowed an employee to recover for injuries that occurred while she was going to work because she was able to show a distinct causal connection between an employer-created condition and her injury.

- 54 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

In *La Croix*, the employer encouraged an employee to park in a parking lot that the employer did not own and to use a shuttle service supplied by the employer to get to her work premises. The employee fell and was injured in the parking lot while on her way to board the shuttle. The Nebraska Supreme Court held that by encouraging the employee to park in the lot and providing transportation to the workplace from the lot, the employer created a condition under which its employees will necessarily encounter hazards while traveling to the premises where they work. As a result, the court held that there was a distinct, causal connection between the employer-sponsored parking lot and the employee's injury and that because a causal connection was present, the employee's injury arose out of and in the course of her employment. *Id.* See, also, *Zoucha v. Touch of Class Lounge*, 269 Neb. 89, 690 N.W.2d 610 (2005) (employee leaving employer's premises in shopping center parking lot was in course of employment); *Coffey v. Waldinger Corp.*, 11 Neb. App. 293, 649 N.W.2d 197 (2002) (employee who sustained injuries while walking from parking spot to worksite entitled to benefits under exception to going to and from work rule).

[11] The Nebraska Supreme Court has recognized other exceptions to the going to and from work rule, each of which follow from the rule's requirement that an employee show a causal connection between an employer-created condition and his or her injury. These exceptions include the employer-supplied transportation exception, *Schademann v. Casey*, 194 Neb. 149, 231 N.W.2d 116 (1975); the commercial traveler exceptions, *Torres v. Aulick Leasing*, 261 Neb. 1016, 628 N.W.2d 212 (2001); and the special errand exception, *id.*

The relevant question in this case is whether Daniel's use of his cell phone to communicate shift-change information while he was driving home was an employer-created condition. As discussed below, the record shows that although the Department expected Daniel to exchange shift-change

- 55 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
27 NEBRASKA APPELLATE REPORTS
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

information, it did not prescribe any one way of doing so. Therefore, Daniel's use of his cell phone while driving home after his shift to convey that information was not an employer-created condition.

While the County characterized exchanging shift-change information as a "suggested practice," the Department clearly expected its deputies to do it. The training staff and supervisors of the Department each testified that exchanging shift-change information is part of every deputy's job and can affect their safety. The practice of exchanging shift-change information appears on the Department's field training checklist, which Andel reviewed with new recruits when they were hired. Andel testified that he exchanged shift-change information every day he was on duty. There was no official policy regarding when the information should be exchanged; that is, whether the exchange should be before or after the deputy clocked in or out. Kruse explained that he allowed 15 or 30 minutes of overtime to ensure that the deputies exchanged shift-change information, although his sergeant may have limited that overtime and deputies were not required to take the overtime to exchange the information.

Even though the Department expected its deputies to exchange shift-change information, it did not dictate how to do so. Specifically, the Department did not instruct them to use their cell phones while driving to exchange shift-change information. In fact, the Department's policy prohibited employees from using their cell phones while driving a county-owned vehicle and instructed them to pull over while engaging in a telephone conversation.

Here, Daniel exchanged shift-change information with Messerlie after he returned his patrol car to the Department's garage at the county courthouse. He clocked out from his shift and chose to use his cell phone to exchange the information while driving his personal vehicle home. The record shows that Daniel was not required to exchange the information in

- 56 -

Nebraska Court of Appeals Advance Sheets
27 Nebraska Appellate Reports
COUGHLIN v. COUNTY OF COLFAX
Cite as 27 Neb. App. 41

the manner he chose to do so and that other options existed to exchange the information.

[12] Although the Department expected Daniel to exchange any necessary shift-change information with Messerlie, Daniel's use of his cell phone while driving to exchange that information was not an employer-created condition. Thus, the going to and from work rule renders Daniel's injury and death noncompensable. Because we find no employer-created condition existed, we need not discuss whether Daniel's accident was causally connected to his cell phone use. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Bayliss v. Clason*, 26 Neb. App. 195, 918 N.W.2d 612 (2018).

## 2. Expansion of Workers' Compensation Law

Kyle assigns that the compensation court erred in concluding that finding for him would result in a dramatic expansion in workers' compensation law as "every state or county employee could conceivably be entitled to workers' compensation benefits for injuries occurring while going to or coming from work if the accident occurred in the state or county where he or she worked." Because we found above that the record in this case contains sufficient information to support the compensation court's denial of benefits, we do not reach this assignment. See *Bayliss, supra*.

## VI. CONCLUSION

The compensation court's conclusion that Daniel had a fixed place of employment at the time of his accident was not clearly erroneous. Further, the court was not clearly erroneous in finding that Daniel's use of his cell phone to exchange shift-change information while driving home after work was not an employer-created condition. As a result, we affirm the compensation court's conclusion that the going to and from work rule renders the injury in this case noncompensable.

Affirmed.