IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


ADDINGTON V. MCDONALD APIARY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


BRYAN P. ADDINGTON, APPELLANT,

V.

MCDONALD APIARY, LLC, APPELLEE.


Filed July 30, 2019.    No. A-18-585.


Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Brian S. Judy, of Sorensen, Hahn & Browning, P.C., for appellant.

Caroline M. Westerhold and Eric J. Sutton, of Baylor Evnen, L.L.P., for appellee.


MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Bryan P. Addington appeals from an order of the Nebraska Workers' Compensation Court finding that he failed to meet his burden of proof to establish that he sustained a neck injury in an accident arising out of and in the course of his employment with McDonald Apiary, LLC, and dismissing his petition. The court found there was no persuasive medical evidence providing causation between Addington's injury and his employment. Based on the reasons that follow, we affirm.

### BACKGROUND

In 2006, prior to his employment by McDonald Apiary, Addington was involved in a motor vehicle accident and sustained injuries to both of his shoulders, which required surgical repair. Addington did not injure his neck in the 2006 accident, and an MRI of his spine taken in 2007 reflected a normal cervical spine. Another MRI taken in 2011, showed mild degenerative disk

- 1 -

disease throughout the cervical spine, but specifically did not show any disk protrusion or herniation or any spinal or neural foraminal stenosis at the C7-T1 level. According to Addington's trial testimony in this case, he had a lot of shoulder pain following the motor vehicle accident.

McDonald Apiary is engaged in the business of commercial migratory beekeeping. Specifically, McDonald Apiary produces honey and provides pollination services in Nebraska, Texas, California, and Washington. It also has a warehouse facility in Lisco, Nebraska. Addington began employment with McDonald Apiary in approximately January 2011 and remained on the company's payroll until near the end of December 2016, after which he was on "retained unemployment status" from sometime in early January until approximately May 2017. Addington was also on retained unemployment status for a period in the first part of 2016 because he did not want to travel, and work during that period was being done in Texas and California. While employed by McDonald Apiary, Addington worked in the company's warehouse in Lisco; he also contacted landowners about the placement of beehives and sometimes traveled outside of Nebraska.

At some point after December 2016, Addington became upset with the owner of McDonald Apiary over issues relating to business matters, housing and personal property, and the use of the Lisco facility to butcher some deer. Various text messages were received into evidence at trial in this case, including a text message sent by Addington in January 2017 to the owner's son indicating that Addington was quitting his employment with McDonald Apiary. According to Addington, these messages were precipitated by the issues between him and the owner and the fact that he was in pain and unable to work.

On June 21, 2017, Addington filed a petition in the compensation court, alleging that on September 22, 2016, he injured his cervical spine in a work-related accident while working at McDonald Apiary's Lisco facility. Specifically, he alleged that he was using a forklift to move 600 pound barrels of honey when the barrel grabber on the forklift failed to hold a barrel, which tipped over. Addington alleged that he hit his head on the forklift's roll cage and jammed his neck in the process of quickly leaving the forklift. Addington also alleged that he grabbed the barrel of honey and wrenched his neck while lifting it. He alleged that he experienced immediate pain in his neck and shoulder area and sustained a herniated cervical disk at C7-T1 and that his injury had left him temporarily totally disabled.

In its answer, McDonald Apiary denied compensability and claimed that Addington failed to give timely notice of his injury.

Trial was held before the compensation court on April 3, 2018. The parties submitted exhibits, including Addington's medical records and trial depositions of Addington's brother and the company owner's son. Addington testified on his own behalf and presented testimony of two individuals, Terry Phelps and Charlene Neel, who were with him at the time of his accident. McDonald Apiary presented testimony from owners, Ed McDonald and Susan McDonald, and a customer, Susan Pryor. The parties stipulated that Addington was employed by McDonald Apiary on the date and time of Addington's alleged accident and injury. We summarize the trial evidence below.

Addington testified that he was working at McDonald Apiary's warehouse facility in Lisco on September 22, 2016, operating a forklift to move barrels of trash, sludge, and honey, and being

assisted by Phelps and Neel. According to Addington, while he was using the forklift to move a barrel of honey, the barrel fell out of the "barrel grabber" attached to the front of the forklift and tipped over on its side. The barrel was full of honey, and he estimated that it weighed approximately 650 pounds. Because he was concerned that the honey would spill from the barrel, he quickly jumped from the forklift, jamming his head into the top of the steel roll cage covering the forklift as he did so.

Addington testified that he had immediate pain from the top of his head into his upper torso and shoulders and that he felt pain all over his body. He stated that he felt agitated, that he was embarrassed that people were looking at him, and that "it hurt like hell." Addington testified that he was concerned that he had reinjured one of his shoulders. He indicated that prior to hitting his head on the forklift and lifting the barrel he was not experiencing that kind of pain. After regaining his senses, Addington helped Phelps lift the barrel, which was too heavy for either of them to lift alone, by leaning over, bending at the knees, and quickly pulling up on the top of the barrel to stand it up. According to Addington, he did not go to the doctor immediately because he normally does not go unless he absolutely has to and he was hoping his symptoms would resolve.

The testimony of Phelps and Neel about the September 22, 2016, incident was generally consistent with Addington's version of events. Phelps testified that he was assisting Addington in the warehouse when he observed that Addington "hit his head getting off [the forklift] on the roll cage and incapacitated himself to some degree." Phelps described Addington as stunned and somewhat nonresponsive after hitting his head and stated that it took Addington a couple of minutes to come to his senses. According to Phelps, immediately after they lifted the barrel, Addington told him that "his head hurt pretty badly and his shoulders were bothering him pretty badly." He indicated that the three of them left the warehouse together approximately 15 minutes after Addington and Phelps lifted the barrel. Addington stayed at Neel's house after the accident, and Phelps, who lives across the street, rode with them to his own residence. Phelps testified that on the ride home, Addington complained of pain in his head, neck, and shoulders. Phelps, who has previous training and experience as an emergency medical technician, was concerned that Addington had injured himself and attempted to convince him to go to the hospital, but Addington refused to go.

Neel also testified to observing Addington jump off the forklift and hit his head on the roll cage after the barrel grabber dropped the barrel. She indicated that after exiting the forklift, Addington "just stood there for a minute. He was stunned." Neel testified that immediately after Addington hit his head, she saw him grab his head and hold it in his hands for a couple of minutes as if he was in pain. She testified that she could tell he was hurting by the way he was holding himself, and she indicated that she could see marks on the top of his head on his bald spot. Neel confirmed that once Addington "got his grip together," he assisted Phelps in picking up the barrel. She agreed that they left the warehouse about 15 minutes later and that Addington "said he was hurting." Neel testified that on the way home, Addington kept rubbing his neck and shoulder.

Addington was scheduled to drive to Colorado to pick up some chemicals for McDonald Apiary on September 23, 2016. The evidence about Addington's activities on that date was conflicting. Phelps testified that he observed Addington on September 23 and that Addington would not leave his bedroom "because he was in pain laying [sic] in bed." During

cross-examination, however, Phelps conceded that he had testified in a deposition that he did not see Addington on September 23. Addington testified that he was in a great deal of pain on September 23 and that he does not remember a lot of what happened that day. According to Addington, he does remember having a telephone conversation with Ed on that date and testified that Ed told him that if Addington's injury was serious it would be taken care of by workers' compensation and that Ed would take care of Addington. Neel recalled hearing this conversation between Addington and Ed, testifying that Addington had his cell phone speaker turned on during the conversation. According to Neel, she heard Addington tell Ed "he was hurting from the honey house and from the forklift" and heard Ed tell Addington "to put it on workmen's comp." In his trial testimony, Ed acknowledged that he spoke with Addington on September 23, but he denied having any conversation about an injury. According to both Ed and Susan, their first notice of Addington's involvement in a work-related accident was when they received a letter from his attorney's law firm in May 2017.

While the parties agree that Addington drove to Colorado on September 23, 2016, the evidence about his trip to Colorado is conflicting, particularly with respect to whether he delivered honey to Pryor in Florence, Colorado, on that date in addition to picking up some chemicals for the company. Pryor testified that she saw Addington deliver the honey that day and that he was moving and shifting barrels of honey weighing approximately 650 to 700 pounds to get them in position to be unloaded from the flatbed truck. Susan and Ed also testified that Addington delivered honey to Pryor on that date. Addington disputes that he made this honey delivery on September 23, testifying only that he drove to Pueblo, Colorado, to pick up his brother after stopping in Greeley, Colorado, to pick up the chemicals. Addington testified that he was in such tremendous pain that he needed his brother to drive the truck home because he did not feel that he could drive safely. Addington indicated that he also spoke with Ed on the way back from Colorado and informed him that he was "still hurting really bad from the injury the day before."

Approximately 5 days after returning from Colorado, Addington went to Uvalde, Texas, for a work-related trip in order to manage the placement of bees in various locations. The testimony about Addington's activities while in Texas was conflicting. Addington testified that he was in so much pain and discomfort that he was unable to complete his work tasks. According to Ed and Susan, Addington was unable to complete his work while in Texas because he was drinking and was drunk most of the time. While Ed testified that he received a call from Addington's brother, who also went to Texas, reporting that Addington was drunk, in his deposition, Addington's brother denied making such a call. Addington also denied having behaved while in Texas as described in Ed's testimony.

Addington first sought medical treatment following the September 22, 2016, incident while in Uvalde. On October 2, he was seen in the emergency room of a hospital in Uvalde, where he presented with complaints of pain in his right shoulder. The medical records do not reflect any mention of a work injury; the history taken shows that he awoke with pain in his right shoulder and arm and trapezius "1 week ago." The history taken also shows that Addington told medical personnel that the pain had gradually worsened. Addington was diagnosed at that time with cervical radiculopathy and osteoarthritis of his right shoulder. According to Addington, he was not asked specifically about an accident or injury while in the emergency room and was only asked

where his pain was located. Addington testified that he was still thinking at that time that he had damaged his "shoulder surgery sites" from the 2006 motor vehicle accident.

On October 7, 2016, Addington again sought treatment in Uvalde when he presented at an urgent care center, complaining of shoulder pain. With respect to his shoulder pain, the history taken at that visit noted, "He complains of right shoulder pain. The location of the pain is deep. It radiates to the arm. The pain initially started one week ago. There was no obvious precipitating injury. [Addington] is unable to describe the discomfort. He denies other related joint symptoms." A physical examination on October 7 showed that Addington's neck range of motion was normal and that he had pain with range of motion in his right shoulder. The medical records from that visit note Addington's "previous surgery on bilateral shoulders." Addington was diagnosed with right shoulder pain. According to Addington, the shoulder pain he was then experiencing was the same kind of pain he had been feeling since the September 22 incident and that he was still questioning whether he had "torn the shoulder pins loose from [his] right shoulder." Addington was questioned at trial about the note reflecting "no obvious precipitating injury," and he testified that he did not recall being asked anything "except for where does it hurt."

Addington testified that prior to seeking medical treatment in Texas he had had discussions with Ed, who indicated that medical care would be provided for him at some point after Addington returned to Nebraska and completed testifying on behalf of McDonald Apiary in a federal trial. The parties agree that the McDonalds drove Addington home from Texas. Both Ed and Susan testified that Addington told them his right shoulder was hurting and that Addington felt that the pain was related to his 2006 motor vehicle accident injury. They both indicated that Addington did not report that he hurt his shoulder in a work-related accident.

On October 21, 2016, Addington saw Dr. Brent E. Adamson, the orthopedic surgeon in Nebraska he had previously seen for his shoulder problems. In his notes from the visit, Adamson recorded the following history:

> This 47 year old male has a 4 week history of radicular pain in his right upper extremity. Came on gradually. There was no injury. He works with bee hives. Does some lifting and so forth but there was no event he can associate with it. He was down in Texas when it started. He came up here to seek medical treatment.

Adamson's records from that date do not show that Addington told him about the forklift incident. Adamson's physical examination showed that Addington was able to rotate his neck left and right 60 degrees, touch his chin to his chest, and had "full extension," although there was some "tightness in the neck." Adamson noted that Addington was not suffering from "a shoulder proble[]m" as he had full range of motion in his shoulder. Adamson suspected Addington had a herniated disk and he requested an MRI. Addington testified that when he went to see Adamson, he was still worried that he might have damaged his previous shoulder surgical site, and he did not recall Adamson asking him about any new accident.

A cervical MRI taken on November 15, 2016, revealed that Addington had a herniated disk at the C7-T1 level. A couple of days after the MRI, Adamson saw Addington again and recorded the following history:

> This all started about 6 weeks ago, he had a couple of 600 lb. barrels of honey fall over and he had to lift them up and strain pretty hard to do that. Didn't feel a pop or anything in the neck at that moment but the next morning he woke up with the pain and numbness in his neck and right upper extremity. It has bothered him ever since.

Addington testified that this was the first time that he knew he had sustained a neck injury. Adamson referred Addington to Dr. Adeleke Badejo for a surgical consult.

During his initial visit with Badejo on November 17, 2016, Addington gave the following history:

> He complained of neck pain with radiation down the right upper extremity along with numbness and tingling involving the medial aspect of the right forearm as well as the medial aspect of right hand and the right ring and little fingers. His symptoms started about six weeks ago without any definite precipitating factor.

Badejo recommended a course of physical therapy to treat Addington.

Addington next saw Adamson for medical treatment on March 28, 2017. Adamson noted the following history reported by Addington at the time of that visit, which is the first time the forklift incident is noted in Adamson's records:

> These symptoms have been present since an injury sustained in October 2016 while working as a beekeeper, lifting heavy barrels. Then he was in a forklift and jumped up to get out in a hurry. Hit his head hard against the top and jammed his head and spine. He also had been lifting heavy 600 pound barrels that day and looking up. . . . Immediately after the injury, he had to leave the next day to go to Texas to take care of some bees for his boss. . . . There was a distinct injury on the day of the onset of symptoms. He has not reported it to work comp.

In his notes, Adamson stated, "It is my opinion that within a reasonable degree of medical probability, [Addington's] current condition and symptoms of a herniated disc at C7-T1 is the direct result of the injury he sustained while working in October 2016. There are no other contributing causes." Adamson noted that Addington did not attend physical therapy "because his insurance doesn't pay for [it]," and he went on to state that physical therapy would not help and could possibly make Addington worse. Adamson recommended that Addington have "cervical decompression, discectomy, and fusion" surgery to treat the herniated disk. Addington has not had the surgery because he does not have the financial means to pay for it.

In a letter dated January 17, 2018, Addington's attorney wrote to Adamson, requesting that Adamson answer certain questions prior to trial. In the letter, Addington's attorney stated:

> [Addington] provided you with a history of the accident, and he describes the accident occurring as he jumped up while in a forklift and striking his head on the roof/roll cage, jamming his head and neck. He then exited the forklift, and wrenched his neck while grabbing and attempting to lift a heavy barrel of honey that had fallen off the grabber on the fork[]lift. He experienced immediate pain in his neck and shoulder area, ultimately

requiring medical care and attention. This injury has left him unable to return to work since that accident.

When Adamson saw Addington on January 19, 2018, he recorded that Addington's complaints of pain and weakness in his upper extremities and neck began after "a work related injury early last year in early 2017." In contrast, in his February 8, 2018, response to the attorney's letter, Adamson stated the following history:

> Addington is a 48 year old male who sustained an injury on or about 9/22/16 while working as a beekeeper. He had to lift some very heavy barrels and beehives repeatedly and the barrels were falling over and he had to catch them and then within a week[']s time he was in a forklift with an enclosed cage and had to jump up to get out in a hurry and hit his head very hard against the top and jammed his head and neck. Since that time he's had pain, weakness, and numbness in his right upper extremity.

McDonald Apiary requested a medical records review from Dr. Benjamin J. Bixenmann. In his report, dated March 5, 2018, Bixenmann found it unlikely that

> [Addington] would have sustained the injury of a herniated cervical disc with severe nerve compression as a result of work events on 9/22/16 and then failed to indicate to his medical providers the mechanism of how his injury occurred for 2 months and then a full description of injury not appear for 6 months.

Bixenmann opined that Addington's herniated disk did not occur as a result of a work accident on September 22, and he stated, "I believe that [Addington] would have recognized such an injury immediately after the event in which it occurred and would have reported such an event to his medical providers soon after the event in which it occurred."

On May 15, 2018, the compensation court entered an order of dismissal. In its discussion of the evidence, the court noted the conflicts in the factual versions of events presented by the witnesses' testimony and in the medical evidence presented by the parties concerning Addington's injury. The court first considered whether Addington sustained a personal injury arising out of and in the course of his employment with McDonald Apiary on September 22, 2016. The court outlined the witness testimony and then stated:

> After considering all the testimony, the Court ruminates that many, if not all, of the witnesses seemed to have a keen recollection of the facts at certain periods of time involving significant events related to the issue of causation of [Addington's] alleged injury, and whether he timely notified [McDonald Apiary] about the injury. And yet, the witnesses' testimony about what happened at these critical times is so divergent it leads the Court to wonder if the witnesses were describing entirely different people, places, events, and activities. At other times, the witnesses were pressed to remember simple, uncontested facts. Several times the veracity of a witness' testimony was called into question through impeachment. The conflicting testimony from the witnesses leaves the Court with the sense that much of the testimony was strategically presented without the desired cohesiveness to allow the Court to find the trial testimony persuasive in the end.

The compensation court then outlined the medical evidence, again noting contradictions in that evidence as well as conflicts between the medical evidence and the witness testimony. The court concluded by stating:

> The Court [h]as weighed the opinions of Adamson and Bixenmann, and balanced those against the factual and medical evidence in the record, and after review of the entire record, the Court finds that the greater weight of the evidence preponderates in favor of a finding that [Addington] has failed to satisfy his burden of proof to establish that he sustained an injury arising out of and in the course of his employment with [McDonald Apiary]. Adamson is the only medical provider to render an opinion connecting [Addington's] herniated disc with the September 22 work incident. As set forth above, Adamson's opinions are based on factual histories which have been called into dispute, and at times, contradict Adamson's own histories as provided by [Addington]. When evaluating all of Adamson's medical records in their larger context, the Court is not convinced that Adamson had a reliable factual basis for his opinions of causation, and the Court finds his opinions unpersuasive. Accordingly, the Court rejects the opinions of Adamson.

Upon finding no persuasive causation opinion linking Addington's injury and his employment, the court dismissed his petition with prejudice.

## ASSIGNMENTS OF ERROR

Addington asserts, consolidated and reordered, that the compensation court erred in (1) finding there was no persuasive medical evidence providing causation between his injury and his employment and (2) finding that he did not satisfy his burden of proof to establish that he sustained an injury arising out of and in the course of his employment with McDonald Apiary.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2018), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *St. John v. Gering Public Schools*, 302 Neb. 269, 923 N.W.2d 68 (2019).

Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018). An appellate court is obligated in workers' compensation cases to make its

own determinations as to questions of law. *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019).

## ANALYSIS

Addington asserts that the compensation court erred in finding there was no persuasive medical evidence providing causation between his injury and his employment.

In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017). If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Id.* The issue of causation of an injury or disability is one for determination by the trier of fact. *Potter v. McCulla*, 288 Neb. 741, 851 N.W.2d 94 (2014).

Adamson's opinion was the only expert medical opinion relied on by Addington to establish the causative link between his employment with McDonald Apiary and his neck injury, opining in March 2017 that Addington's cervical disk herniation was the direct result of his work-related accident in the fall of 2016. However, the compensation court was not persuaded by Adamson's opinion based on the inconsistencies in the histories provided to Adamson and the conflicts between the medical records and the witness testimony at trial with respect to the occurrence of an accident. After weighing the opinions of Adamson and Bixenmann and balancing them against the other evidence in the record, the court rejected Adamson's opinion, finding that Addington had failed to prove the causal relationship linking his employment with McDonald Apiary to his neck injury.

As set forth in the background section above, the medical evidence in this case reflects a shifting patchwork of histories. Addington's accident allegedly occurred on September 22, 2016. When he first sought treatment in Texas for shoulder pain on October 2, he did not mention any work injury, informing his treatment providers that he awoke with pain in his right shoulder approximately 1 week prior and that the pain gradually worsened. As noted by the compensation court, this history contradicts Addington's testimony that he felt immediate pain and discomfort after hitting his head on the forklift on September 22. Five days later when he again sought treatment in Texas for shoulder pain, the medical history states that the pain started 1 week prior with no obvious precipitating injury. When Addington first sought treatment with Adamson on October 21, Adamson's notes reflect that there was no injury associated with Addington's pain, which came on gradually and started while Addington was in Texas. The first time Adamson's notes mention a history associating Addington's pain with his work activity is following the cervical MRI in November, and we note, as did the compensation court, that the description of events given at that time contradicts that given in Addington's trial testimony. During his visit with Badejo on that same date, the history given by Addington indicated that his symptoms began 6 weeks earlier without any definite precipitating factor. Addington next sought treatment from Adamson in March 2017; the history given at that time does reflect a work accident but conflicts with earlier histories and the trial testimony of Addington, Phelps, and Neel.

The compensation court rejected Adamson's opinion in light of these contradictions. The court stated, "Adamson's opinions are based on the histories he was given. If those histories prove inaccurate then the opinions lose their probative value." The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical evidence, even when the health care professionals do not give live testimony. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). The Workers' Compensation Court is not required to take an expert's opinion as binding and may, as may any other trier of fact, either accept or reject such an opinion. *Stansbury v. HEP, Inc.*, 248 Neb. 706, 539 N.W.2d 28 (1995). The compensation court did not find Adamson's opinion persuasive, as it was entitled to do and, thus, did not give weight to his causation opinion.

In rejecting Adamson's opinion and determining that Addington did not prove causation, the compensation court also considered the expert opinion of Bixenmann offered by McDonald Apiary, as well as the rest of the evidence in the record. Bixenmann opined that Addington's herniated disk did not occur as a result of a work accident on September 22, 2016. The court stated that it weighed the opinions of Adamson and Bixenmann, balanced them against the factual and medical evidence in the record, and found that after review of the entire record, the greater weight of the evidence supported a finding that Addington failed to prove a connection between his injury and his employment.

If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018). We conclude that the compensation court weighed and balanced the expert medical opinions, as well as the rest of the evidence in the record, and that there was sufficient evidence to support the finding that Addington did not prove that his neck injury was caused by his employment with McDonald Apiary. Addington's assignment of error with respect to the causal relationship between his injury and his employment fails for the reasons stated above.

Addington also asserts that the compensation court erred in finding that he did not satisfy his burden of proof to establish that he sustained an injury arising out of and in the course of his employment with McDonald Apiary. Because we have determined that the court did not err in finding that Addington failed to prove that his neck injury was caused by his employment with McDonald Apiary, we need not address this remaining assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Coughlin v. County of Colfax*, 27 Neb. App. 41, 926 N.W.2d 675 (2019).

CONCLUSION

We conclude that the compensation court did not err in finding that Addington failed to meet his burden of proof to establish that his neck injury was caused by his employment with McDonald Apiary. Accordingly, the order dismissing his petition with prejudice is affirmed.

AFFIRMED.